UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re                                                                      Chapter 11

      Panzer Building Corp.                                Case no.  23-11924 (JPM)

\                                      Debtor.
----------------------------------------------------------x

## MOTION TO EXCUSE COMPLIANCE WITH SECTION 543 OF THE BANKRUPTCY CODE AND FOR HEARING ON SHORTENED NOTICE

     651 West 169th Lender LLC (the "Mortgagee"), the holder of a first mortgage on the

property owned by Panzer Building Corp. (the "Debtor") located at 651 West 169th Street, New

York, New York a/k/a 226/230 Fort Washington Avenue, New York, New York (the

"Property"), as and for its motion ("Motion") for the entry of an order excusing compliance by

Edward A. Vincent as receiver ("Receiver") with § 543(a) and (b) of the Bankruptcy Code

pursuant to §543(d)(1) of the Code, and for a hearing on the Motion on shortened notice,

respectfully states as follows:

**(a) The State Supreme Court appointed the Receiver for the Property in February,**

**(b) This case was filed to stay a contempt hearing against the Debtor and Nancy Haber for refusing to turnover possession and management,**

**(c) The bankruptcy filing also displaced the Receiver as a matter of law, making it illegal for him to perform emergency elevator, roof and water leak repairs ordered by the Supreme Court over a month ago, and**

**(d) The Debtor has done nothing since filing this case to obtain this Court's permission to do the emergency repairs itself or to otherwise advance the case, so the Receiver should be reinstated forthwith to ensure that tenants, creditors and the Property are protected during this case.**

## **<u>BACKGROUND</u>**

1.      On December 4, 2023, the Debtor filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. 101 <u>et seq</u>. (the "Bankruptcy Code").

2.      The Debtor owns the real property at 651 West 169th Street, New York, New York a/k/a 226/230 Fort Washington Avenue, New York, New York (the "Property"), pictured below.  The Property is a five-story building with about 20 residential apartments and 2 commercial units.



3.      The Property is subject to the Mortgagee's foreclosure action, Index No. 725426/2020 pending in the Supreme Court of New York County (the "Foreclosure"). The Receiver was appointed under a February 28, 2023 order ("Exhibit A).

4.      On October 19, 2023, the Supreme Court entered a decision and order granting the Mortgagee summary judgment (Exhibit B).

5.      On November 15, 2023, Matthew D. Hunter III, as referee, completed his Oath of Referee to Compute ("Exhibit C") finding that as of October 23, 2023, the Debtor owes the Mortgagee $6,051,488 plus per diem interest of $2,599 each day thereafter. The total amount due to the Mortgagee as of the Petition Date is $6,160,646.

6.      The Debtor's petition shows $419,000 of unpaid real estate taxes, a $230,000 York State Department of Finance claim, and $18,000 of vendor claims.

7.      The Local Rule Affidavit states that the Property generates $670,000 of annual rental income.

8.      Instead of paying the mortgage and taxes, the Petition discloses that the Debtor conveyed $600,000 to insider affiliates. The case, therefore, was filed with no cash on hand except $59,000 of commercial prepaid rent and $5,000 of tenant security deposits. The remainder of the tenant security deposits seem to be missing as well.

9.      On November 6, 2023, the Receiver filed a motion to hold the Debtor and Nancy Haber, the Debtor's principal, in contempt for failing to turnover possession and management, among other things.

10.     In his affidavit in support of his application (Exhibit D), the Receiver states the Debtor and Ms. Haber: "refused and failed to provide keys, leases, agreements, security deposits, and correspondence to the Receiver," "refused and failed to provide an accounting for all rents since August 7, 2023," and "continued to issue leases and collect rents to date."

11.     The Receiver's affidavit in support of emergency repairs (included in exhibit D) documented with vendor proposals, emergency repairs needed to repair "leaks in the wall and roof" and elevator brake shoes, motor shaft and bearings.

12.     On November 8, 2023, the Supreme Court entered an Order To Show Cause for Contempt (Exhibit E) to be heard on December 5, 2023 to compel compliance with the Receiver Order.  Pending the hearing, the Supreme Court authorized the Receiver to repair the elevator, repair the plumbing and leaks and enjoined the Debtor and Ms. Haber from collecting rent.

13.     The Debtor and Ms. Haber, however, continued to deny the Receiver access to make the emergency repairs, and then filed this bankruptcy the day before the contempt hearing to stay the Supreme Court from enforcing the Receiver order (Exhibit A) and the emergency repair/contempt order to show cause (Exhibit E) and to displace the Receiver as a matter of bankruptcy law so he could not perform the emergency repairs absent an order of this Court.

4

14.     The Debtor has done nothing since filing this case obtain this Court's permission to do the emergency repairs itself or to otherwise advance the case, so the Receiver should be reinstated forthwith to ensure that tenants and creditors are protected while under this Court's jurisdiction.

## RELIEF REQUESTED HEREIN

15.     By this Application, therefore, the Mortgagee seeks the entry of an order excusing compliance with section 543 of the Bankruptcy Code under section 543(d)(1) of the Bankruptcy Code and a hearing on the Application on shortened notice.

16.     Sections 543(a) and (b)(1) of the Bankruptcy Code generally require a custodian to deliver to the trustee any property of the debtor held by a custodian and to turnover management to the Debtor.  Section 543(d)(1) of the Bankruptcy Code, however, lets the court excuse turnover:

> after notice and a hearing, the bankruptcy court— (1) may excuse compliance with subsection (a) . . . if the interests of creditors . . . would be better served by permitting the custodian to continue in possession, custody or control.

11 U.S.C. § 543(d).

17.     In determining whether cause exists to let a receiver retain possession and administration of property, courts generally analyze these factors: (a) whether there will be enough income to fund a successful reorganization; (b) whether the debtor will use the property to benefit its creditors; (c) whether there has been mismanagement by the debtor; and (d) whether there are preferences which a receiver is not empowered to avoid.  *In re Lizeric Realty*

*Corp.*, 188 B.R. 499, 506-07 (Bankr. S.D.N.Y. 1995); *In re Constable Plaza Assocs., L.P.*, 125

B.R. 98, 103 (Bankr. S.D.N.Y. 1991).

18.     "Section 543(d) cases are fact intensive, turning upon whether the assets

of a particular debtor should be administered by the existing custodian or returned to the debtor."

*In re Uno Broad. Corp.*, 167 B.R. 189, 200-01 (Bankr. D. Ariz. 1994) (allowing receiver to

remain in place when receiver was moving expeditiously and professionally to manage debtor's

affairs and substantial evidence of debtor's mismanagement was presented).

19.     Based on the Receiver's credible allegations that the Debtor and Ms.

Haber have obstructed both the Supreme Court Receiver order and the performance of repairs

needed to ensure tenant safety, the Mortgagee believes that cause exists under section 543(d).

The diversion of rental income to insiders while the Debtor's mortgage and taxes went unpaid

constitutes additional cause.

20.     Where evidence of mismanagement exists, courts routinely excuse the

receiver from compliance under § 543(d)(1) of the Bankruptcy Code to avoid the unnecessary

confusion, expense and disruption attendant to requiring compliance with subsections (a) through

(c) of § 543 of the Bankruptcy Code. *See In re Lizeric Realty Corp.*, 188 B.R. at 506-507 (court

found that debtor mismanaged the property where, before the receiver's appointment, debtor

defaulted under two mortgages, did not pay taxes and let liens be filed against the property); *In*

*re Dill*, 163 B.R. 221,226 (E.D.N.Y. 1994) (affirming bankruptcy court holding that receiver

should be excused from turnover requirements for mismanagement where Debtor spent security

6

deposits, did not obtain certificates of occupancy and secured creditor had to pay for repairs to

the properties); *In re CCN Realty Corp.*, 19 B.R. 526 (Bankr. S.D.N.Y. 1982) (receiver allowed

to continue in possession of property where Debtor has no incentive to collect rent other than to

satisfy the secured claim asserted by the bank); *In re Plantation Inn Partners*, 142 B.R. 561, 563

(Bankr. S.D. Ga. 1992) (receiver excused from turnover where court found that debtor had

defaulted on mortgage payments, did not pay taxes, paid over $50,000.00 to debtor's principal or

his affiliated companies for "management services" without documentation or justification, did

not report revenues and pay franchise fees to its franchisor, did not place casualty and liability

insurance on the property, let flood insurance lapse, hired an unqualified manager for the hotel,

and did not maintain current accounting records); *In re WPAS, Inc.*, 6 B.R. 40, 44 (Bankr. M.D.

Fla. 1980) (court let receiver remain in possession and control of assets where debtor disregarded

its duty to file payroll tax returns and pay FICA taxes and drew checks on accounts without

determining the sufficiency of funds).

      21.     Another consideration in determining whether to excuse the Receiver from

the turn over requirements of § 543 of the Bankruptcy Code is whether there will be enough

income to fund a successful reorganization. *In re Lizeric Realty Corp.*, 188 B.R. at 506-07.

      22.     Here, the Local Rule Affidavit states that the Debtor's intends to liquidate,

not reorganize.  The absence of any net operating income despite non-payment of the mortgage

and real estate taxes and neglect of critical building maintenance, suggests that management by

the Receiver is necessary to preserve and protect tenants, creditors and the estate while

marketing the Property.

23.     Regarding avoidance issues, the fourth factor, the Debtor has no avoidance claims against the Receiver, and the Receiver's management of the Property will not affect the Debtor's ability to prosecute avoidance actions, assuming for the sake of argument that Ms. Haber would sue herself to recover the $600,000 of insider transfers.

24.     The Mortgagee is moving by order to show cause instead of by notice of motion because emergency repairs already ordered by the Supreme Court are overdue.  They should be made promptly to ensure tenant and Property safety.

25.     The undersigned contacted Kevin Nash on December 14, 2023 to inform him the Mortgagee would move on an emergency basis and gave him a copy of the pleadings at that time.

26.     No prior application has been made for the relief sought herein.

## **CONCLUSION**

WHEREFORE, the Mortgagee respectfully requests that the Court grant the relief

sought, and that the Court grant such other relief as may be just and proper.

Dated: New York, New York
       December 14, 2023

                                  **BACKENROTH FRANKEL & KRINSKY, LLP**
                                  Attorneys for the Mortgagee


                         By:      s/Mark A. Frankel
                                  488 Madison Avenue, 23rd Floor
                                  New York, New York 10022
                                  (212) 593-1100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

In re                                                    Chapter 11

    Panzer Building Corp.                         Case no.  23-11924 (JPM)

                        Debtor.            **DECLARATION**

---------------------------------------------------------x

      Mark A. Frankel states under penalty of perjury as follows:

        1.      I am a member of the firm of Backenroth Frankel & Krinsky, LLP ("BFK"), which maintains an office for the practice of law at 488 Madison Avenue, New York, New York 10022.  I am fully familiar with the facts hereinafter stated and submit this declaration in support of the application of 651 West 169th Lender LLC for a hearing on shortened notice to consider the annexed motion.

        2.      The Debtor is not moving by regular notice of motion because the Receiver Affidavit details necessary emergency repairs already ordered by the Supreme Court, and the repairs should be made promptly to ensure Property safety.

Dated:  New York, New York
       December 14, 2023

                                  s/Mark Frankel

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                                    Chapter 11

      Panzer Building Corp.                              Case no.  23-11924 (JPM)

                  Debtor.
------------------------------------------------------------x

## <u>ORDER</u>

Upon the application (the "Application") of 651 West 169th Lender LLC (the "Mortgagee"), the holder of a first mortgage on the property owned by Panzer Building Corp. (the "Debtor") located at 651 West 169th Street, New York, New York a/k/a 226/230 Fort Washington Avenue, New York, New York (the "Property"), for an order excusing compliance by Edward A. Vincent  as receiver ("Receiver"), with § 543(a) and (b) of the Bankruptcy Code pursuant to § 543(d)(1) of the Code, and upon the hearing held before this Court on December ___, 2023, and after due deliberation and sufficient cause appearing therefor, and pending further order of this Court, it is

ORDERED, that the Receiver be, and he hereby is, excused from compliance with sections 543(a) and (b) of the Bankruptcy Code; and it is further

ORDERED, that the Debtor, its members, officers, agents, servants and employees and any parties under their direction or control or acting in concert or participation with them be, and hereby are, enjoined from collecting or accepting any and all rents with respect to the Property; and it is further

ORDERED, that the Debtors, their members, officers, agents, servants and employees and any parties under their direction or control or acting in concert or participation with them, be, and they hereby are, enjoined from interfering with or attempting to interfere with the Receiver's obligations as So-Ordered by the February 28, 2023 Supreme Court of Queens County in case no 850045/2023 (the "Foreclosure Action"); and it is further

ORDERED, that the Debtor turn over to the Receiver any and all rents, income and profits arising from leases, tenancies, extensions or renewals for lease periods on or after the Receiver's appointment; and it is further

ORDERED, that the Debtor turnover to the Receiver any and all books, records, tenant histories, extensions, renewals and all other records relating to the Property, and the original tenant leases relating to the Property as reasonably necessary to operate the Property; and it is further

ORDERED, that the Receiver be, and hereby is, authorized and empowered to make emergency repairs to the Property, including without limitation, the repairs ordered by the November 8, 2023 Supreme Court Order in the Foreclosure Action.

Dated: December ___, 2023
     New York, New York

                         _____
                         John P. Mastando III
                         UNITED STATES BANKRUPTCY JUDGE

Exhibit A

At Part 32 of the Supreme Court of the State
of New York held in and for the County of
New York at the Courthouse, 111 CENTRE
Street, New York, New York, on the 22 day
of FEB , 2023

## HON. FRANCIS A. KAHN III

PRESENT: _____ J.S.C.J.S.C.

---

651 WEST 169TH LENDER LLC,

                              Plaintiff,

- v -

PANZER BUILDING CORP., NANCY J. HABER,
NEW YORK CITY DEPARTMENT OF FINANCE,
CITY OF NEW YORK ENVIRONMENTAL
CONTROL BOARD, NEW YORK STATE
DEPARTMENT OF TAXATION AND FINANCE
and JOHN DOE #1 THROUGH JOHN DOE #20
(said John Doe defendants being fictitious, it being
intended to name all other parties who may have
some interest in or lien upon the premises sought to
be foreclosed),

                              Defendants.

---

Index No. 850045/2023

**ORDER APPOINTING
RECEIVER
IN MORTGAGE
FORECLOSURE ACTION**

---

Upon the Summons and Complaint filed by Plaintiff 651 WEST 169TH LENDER LLC

(the "Plaintiff") in the office of the Clerk of New York County on February 7, 2023, and upon

reading and filing the affidavit of Ralph Dweck in Support of Plaintiff's Application for an Order

Appointing Receiver in Mortgage Foreclosure Action; it is

**ORDERED**, that EDWARD A. VINCENT     of BORCHERT + LASPINA
19-02 WHITESTONE EXPY - STE 302
NY NY — 718-767-3333

New York, be and is hereby appointed, with the usual powers and directions Temporary Receiver

(the "Receiver") for the benefit of the Plaintiff of all the rents and profits now due and unpaid or

to become due during the pendency of this action and issuing out of the mortgaged premises

mentioned in the Complaint, more particularly described in Schedule A hereto, and commonly known as 651 West 169th Street, New York, New York a/k/a 226/230 Fort Washington Avenue, New York, New York (the "Mortgaged Premises"); and it is further,

**ORDERED** that the said Receiver is authorized to forthwith take charge and enter into possession of the Mortgaged Premises; and it is further

**ORDERED** that, before entering upon his/her duties, said Receiver shall be sworn to fairly and faithfully discharge the duties committed to him/her and shall execute to the People of the State of New York and file with the Clerk of this Court an undertaking in the penal sum of $ 98,742.18 , conditioned for the faithful discharge of his/her duties as such Receiver; and it is further,

**ORDERED** that said Receiver be and is hereby directed to demand, collect and receive from the occupants, tenants, and licensees in possession of said premises, or other persons liable therefore, inclusive of the mortgagor, all the rents and license fees thereof now due and unpaid or hereafter to become fixed or due, and that said Receiver be and is hereby authorized to institute and carry on all legal proceedings necessary for the protection of said premises or to recover possession of the whole, or any part thereof, and/or apply to the Court to fix reasonable rental value and license fee value and to compel the tenants and occupant(s) to attorn to the Receiver; and it is further

**ORDERED** that the Receiver may institute and prosecute suits for the collection of rent, license fees and other charges now due or hereafter to become due or fixed, and summary proceedings for the removal of any tenants or licensees or other persons therefrom; and it is further,

**ORDERED** that, pursuant to the provisions of the General Obligations Law section 7-105, anybody holding any deposits or advances of rental as security under any lease or license

- 2 -

agreement affecting space in the premises affected by this action shall turn same over to said Receiver within five (5) days after said Receiver shall have qualified; and thereupon the said Receiver shall hold such security subject to such disposition thereof as shall be provided in an Order of this Court to be made and entered in this action; and it is further,

**ORDERED** that anybody in possession of same shall turn over to said Receiver all rent lists, orders, unexpired and expired leases, agreements, correspondence, notices and registration statements relating to rental space or facilities in the premises; and it is further,

**ORDERED** that, notwithstanding anything to the contrary contained in this order, the said Receiver shall not, without the further prior order of this Court, upon prior notice to plaintiff, make improvements or substantial repairs to the property at a cost in excess of $1,000.00; and it is further,

**ORDERED** that said Receiver forthwith deposit all monies received by him/her at the time he/she receives same in an account at AN FDIC INSURED BANK (the "Depository") or in an account established by the Receiver for the purposes of receipt of such funds, such account to be in his/her name, as Receiver, and to show the name of the instant case; the Depository shall furnish monthly statements regarding such account to the Receiver, who will in turn provide such statements to Plaintiff's counsel on a timely basis; and it is further

**ORDERED** that said Receiver be and is authorized from time to time to rent or lease any part of the premises for terms not exceeding one (1) year or such longer terms as may be required by the State of New York; to keep said premises insured against loss by damage or fire; to pay the taxes, assessments, water rates, sewer rents, vault rents, salaries of employees, supplies and other charges; to comply with all the lawful requirements of any municipal department or other authority

- 3 -

of the municipality in which the mortgaged premises are situated; and to procure such fire, plate glass, liability and other insurance as may be reasonably necessary; and it is further,

**ORDERED** that the tenants, licensees or other persons in possession of said premises attorn to said Receiver and pay over to said Receiver all rents, license fees and other charges of such premises now due and unpaid or that may hereafter become due; and that the defendants be enjoined and restrained from collecting the rents, license fees and other charges of said premises and from interfering inany manner with the property or its possession; and from transferring, removing or in any way disturbing any of the occupants or employees; and that all tenants, occupants, employees and licensees of the premises and other persons liable for the rents be and hereby are enjoined and restrained from paying any rent or license fees or other charges for such premises to the defendants, their agents, servants or attorneys; and it is further,

**ORDERED** that the Receiver is prohibited from incurring obligations in excess of the monies in his/her hands without further Order of this Court or written consent of the Plaintiff's attorney; and it is further,

**ORDERED** that the Owner turn over to the Receiver all rents collected from and after the date of this Order; and it is further,

**ORDERED** that all persons now or hereafter in possession of said premises, or any part thereof, and not holding such possession under valid and existing leases or tenancies, do forthwith surrender such possession to said Receiver, subject to emergency laws, if any; and it is further,

**ORDERED** that said Receiver after paying the expenses of the management and care of the said premises as above provided retain the balance of the monies which may come into his/her hands until the sale of the said premises under the judgment to be entered in this action and/or until further Order of this Court; and it is further,

- 4 -

**ORDERED** that if it is necessary in the fulfillment of the Receiver's duties, Plaintiff may, but shall not be required, to advance funds to the Receiver for the payment of repairs, maintenance, insurance, taxes, the curing of violations or any other expense which may be necessary for the preservation and protection of the Mortgaged Premises by the Receiver and to the extent that the rents, issues and profits collected by the Receiver and remaining in the Receiver's account are insufficient to reimburse Plaintiff for such advances, all such advances made by Plaintiff shall be secured by its mortgage and shall be added to and included to the debt thereupon due and in the judgment of foreclosure and sale; and it is further

**ORDERED** that said Receiver shall file a monthly accounting with Plaintiff's counsel beginning with the date of this Order and monthly thereafter during the term of the receivership; and it is further

**ORDERED** that said Receiver, or any party hereto, may at any time, on proper notice to all parties who may have appeared in this action, apply to this Court for further or other instructions or powers necessary to enable said Receiver to properly fulfill his duties; and it is further

**ORDERED** that for his services, Receiver shall be compensated for the faithful discharge of his duties provided for in Section 8004 of the Civil Practice Law and Rules; and it is further

**ORDERED** that the appointee named as Receiver herein shall comply with the provisions of Section 35(a) of the Judiciary Law, Sections 6401-6405 of the Civil Practice Law and Rules, and Article 13 of the Real Property Actions and Proceedings Law and Rule 36 of the Chief Judge.

[REMAINDER OF PAGE LEFT BLANK]

- 5 -

FILED: NEW YORK COUNTY CLERK 03/03/2023 11:57 AM
INDEX NO. 850045/2023
NYSCEF DOC. NO. 22
RECEIVED NYSCEF: 03/03/2023

23-11924-jpm    Doc 7    Filed 12/15/23    Entered 12/15/23 17:34:50    Main Document
Pg 19 of 94

   **NOTWITHSTANDING ANY OTHER PROVISION OF THE ORDER TO THE CONTRARY, THE RECEIVER SHALL NOT APPOINT AN ATTORNEY, AGENT, APPRAISER, AUCTIONEER OR ACCOUNTANT WITHOUT PRIOR ORDER OF THIS COURT**.

ENTER

_____
J.S.C.

HON. FRANCIS A. KAHN III
J.S.C.

## SCHEDULE A

### DESCRIPTION OF MORTGAGED PREMISES

All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County of New York, City and State of New York, known and designated as Lots Numbers 30 and 31 on a certain map entitled "Map of property belonging to the heirs of Susan B. Ward of Fort Washington, approved by the Supreme Court, New York County, by order entered November 16, 1896, as a plan of sale and partition" made by John G. Van Horne, C.E. and C.S., which said plot is bounded and described as follows:

BEGINNING at a point on the easterly side of Fort Washington Avenue, distant one hundred twenty-six and forty-six one hundredths feet (126.46) southerly from the corner formed by the intersection of the southerly side of 170th Street with the easterly side of Fort Washington Avenue, measured along the said easterly side of said avenue;

RUNNING THENCE easterly along the southerly side of Lot No. 29 on said map, and parallel with the southerly side of 170th Street, ninety and sixty-seven one hundredths feet (90.67) to Lot No. 32 on said map;

THENCE southerly along the said Lot No. 32, and at right angles to the southerly side of 170th Street, fifty and forty-five one hundredths feet (50.45) to the northerly side of 169th Street;

THENCE westerly along the said northerly side of 169th Street, eighty and eighty-one one hundredths feet (80.81) to the easterly side of Fort Washington Avenue; and

THENCE northerly, along the said easterly side of Fort Washington Avenue, fifty-one and forty-two one hundredths feet (51.42) to the point or place of BEGINNING.

Note: Address, Block & Lot shown for informational purposes only

Designated as Block 2138, Lot 132, New York County and also known as 651 West 169th Street a/k/a 226 Fort Washington Avenue, New York, NY 10032.

- 7 -

Exhibit B

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

**PRESENT:**   **HON. FRANCIS A. KAHN, III**                     **PART**                     **32**

*Justice*

--------------------------------------------------------------------------------X

651 WEST 169TH LENDER LLC,

                                   Plaintiff,

                      - v -

PANZER BUILDING CORP., NANCY J. HABER, NEW
YORK CITY DEPARTMENT OF FINANCE, CITY OF NEW
YORK ENVIRONMENTAL CONTROL BOARD, NEW YORK
STATE DEPARTMENT OF TAXATION AND FINANCE,
JOHN DOE #1 THROUGH JOHN DOE #20,

                                   Defendant.

--------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 850045/2023 |
| **MOTION DATE** | |
| **MOTION SEQ. NO.** | 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58

were read on this motion to/for                     JUDGMENT - SUMMARY                     .

Upon the foregoing documents, the motion is determined as follows:

The within action is to foreclose on a commercial mortgage encumbering a parcel of real property located 651 West 169th Street, New York, New York. The mortgage, dated February 14, 2020, was given by Defendant Panzer Building Corp. ("Panzer") to non-party Signature Bank ("Signature") and secures a loan with an original principal amount of $4,000,000.00 which is memorialized by a note of the same date. The note and mortgage were executed by Defendant Nancy J. Haber ("Haber") as President of Panzer. Concomitantly with these documents, Haber executed a limited personal guaranty of the indebtedness. On February 24, 2022, the parties executed a forbearance agreement wherein Panzer and Haber acknowledged the indebtedness and the default. They also waived any "offsets, defenses, claims, or counterclaims against Lender". Plaintiff commenced this action and alleged that Panzer defaulted in repayment of the indebtedness. Panzer and Haber answered and pled fourteen affirmative defenses, including lack of possession of the note.

Now, Plaintiff moves for summary judgment against Defendants, striking their answer and affirmative defenses, a default judgment against all non-appearing parties, to appoint a Referee to compute and to amend the caption. Defendants Panzer and Haber oppose the motion.

In moving for summary judgment, Plaintiff was required to establish *prima facie* entitlement to judgment as a matter of law though proof of the mortgage, the note, and evidence of Defendants' default in repayment (*see U.S. Bank, N.A. v James,* 180 AD3d 594 [1st Dept 2020]; *Bank of NY v Knowles*, 151 AD3d 596 [1st Dept 2017]; *Fortress Credit Corp. v Hudson Yards, LLC*, 78 AD3d 577 [1st Dept 2010]). Proof supporting a *prima facie* case on a motion for summary judgment must be in admissible form (*see* CPLR §3212[b]; *Tri-State Loan Acquisitions III, LLC v Litkowski*, 172 AD3d 780 [1st Dept 2019]).

Based on the affirmative defenses pled, Plaintiff was required to demonstrate, *prima facie*, its standing (*see eg Wells Fargo Bank, N.A. v Tricario*, 180 AD3d 848 [2nd Dept 2020]).

In support of a motion for summary judgment on a cause of action for foreclosure, a plaintiff may rely on evidence from persons with personal knowledge of the facts, documents in admissible form and/or persons with knowledge derived from produced admissible records (*see eg U.S. Bank N.A. v Moulton*, 179 AD3d 734, 738 [2d Dept 2020]). No particular set of business records must be proffered, as long as the admissibility requirements of CPLR 4518[a] are fulfilled and the records evince the facts for which they are relied upon (*see eg Citigroup v Kopelowitz*, 147 AD3d 1014, 1015 [2d Dept 2017]).

Plaintiff's motion was supported with the affidavits from Ralph Dweck ("Dweck"), an employee of Plaintiff, as well as from Jesse Punn ("Punn"), an Asset Management Officer of Signature, Plaintiff's alleged assignor. Dweck's affidavit laid a proper foundation for the admission of the records of Plaintiff into evidence under CPLR §4518 (*see Bank of N.Y. Mellon v Gordon*, 171 AD3d 197 [2d Dept 2019]). The records of other entities were also admissible since Dweck sufficiently established that those records were received from their makers and incorporated into the records Plaintiff kept and it routinely relied upon such documents in its business (*see U.S. Bank N.A. v Kropp-Somoza,* 191 AD3d 918 [2d Dept 2021]). Further, the affidavit of Punn established a foundation for the admission of Signature's records into evidence under CPLR §4518. The records referenced by Dweck and Punn were referenced in their affidavits and annexed to the moving papers (*cf. Deutsche Bank Natl. Trust Co. v Kirschenbaum*, 187 AD3d 569 [1st Dept 2020]).

The affidavits and referenced documents sufficiently evidenced the note and mortgage. As to the Mortgagor's default, it "is established by (1) an admission made in response to a notice to admit, (2) an affidavit from a person having personal knowledge of the facts, or (3) other evidence in admissible form" (*Deutsche Bank Natl. Trust Co. v McGann*, 183 AD3d 700, 702 [2d Dept 2020]). Here, Dweck's review of the attached account records demonstrated that the Mortgagor defaulted in repayment under the note (*see eg ING Real Estate Fin. (USA) LLC v Park Ave. Hotel Acquisition, LLC*, 89 AD3d 506 [1st Dept 2011]). The indebtedness and default were also established based on the terms of the forbearance agreement (*see Redrock Kings, LLC v Kings Hotel, Inc.,* 109 AD3d 602 [2d Dept 2013]; *EMC Mortg. Corp. v Stewart*, 2 AD3d 772 [2d Dept 2003]).

As to standing in a foreclosure action, the note is the dispositive instrument (*Aurora Loan Servs., LLC v Taylor*, 25 NY3d 355, 361-362 [2015]). "'Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident'" (*U.S. Bank N.A. v Carnivale*, 138 AD3d 1220, 1221 [2d Dept 2016], *quoting Onewest Bank, F.S.B. v Mazzone*, 130 AD3d 1399, 1400 [2d Dept 2015]). However, "mere physical possession of a note at the commencement of a foreclosure action is insufficient to confer standing or to make a plaintiff the lawful holder of a negotiable instrument for the purposes of enforcing the note" (*U.S. Bank N.A. v Moulton*, 179 AD3d 734, 737 [2d Dept 2020]). "Holder status is established where the plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears a special indorsement payable to the order of the plaintiff" (*Wells Fargo Bank, NA v Ostiguy*, 127 AD3d 1375, 1376 [2d Dept 2015] [citations omitted]). The indorsement must be made either on the face of the note or on an allonge "so firmly affixed thereto as to become a part thereof" (UCC §3-202[2]). "The attachment of a properly endorsed note to the complaint may be sufficient to establish, prima facie, that the plaintiff is the holder of the note at the time of commencement" (*Deutsche Bank Natl. Trust Co. v Webster,* 142 AD3d 636, 638 [2d Dept 2016]; *cf. JPMorgan Chase Bank, N.A. v Grennan*, supra).

**850045/2023   651 WEST 169TH LENDER LLC vs. PANZER BUILDING CORP. ET AL**                **Page 2 of 5**
**Motion No.  003**

In this case, Plaintiff annexed a copy of the note to the complaint to which an allonge was attached. That document contained an endorsement to Plaintiff executed by Signature. Dweck's representations regarding the note were sufficient to demonstrate Plaintiff was in possession of a properly endorsed note when the action was commenced (*see PNC Bank, NA v Salcedo*, 161 AD3d 571 [1st Dept 2018]; *Bank of New York Mellon v Knowles*, 151 AD3d 596 [1st Dept 2017]).

Accordingly, Plaintiff demonstrated *prima facie* the note, mortgage and Defendant's default in repayment thereunder.

In opposition, Defendant's claim that Plaintiff failed to demonstrate entitlement to summary judgment, its standing or compliance with statutory requirements is without merit. The arguments concerning lack of a payoff letter is not supported by the loan documents or forbearance agreement. The complaint concerning default interest relates to the amount due and owing under the mortgage which is not a defense to summary judgment but rather an issue for the reference to compute (*see 1855 E. Tremont Corp. v Collado Holdings LLC,* 102 AD3d 567, 568 [1st Dept 2013]).

In any event, as pled, all the affirmative defenses are entirely conclusory and unsupported by any facts in the answer. As such, these affirmative defenses are nothing more than unsubstantiated legal conclusions which are insufficiently pled as a matter of law (*see Board of Mgrs. of Ruppert Yorkville Towers Condominium v Hayden,* 169 AD3d 569 [1st Dept 2019]; *see also Bosco Credit V Trust Series 2012-1 v. Johnson,* 177 AD3d 561 [1st Dept 2020]; *170 W. Vil. Assoc. v. G & E Realty, Inc.*, 56 AD3d 372 [1st Dept 2008]; *see also Becher v Feller*, 64 AD3d 672 [2d Dept 2009]; *Cohen Fashion Opt., Inc. v V & M Opt., Inc.*, 51 AD3d 619 [2d Dept 2008]). Further, to the extent that specific legal arguments were not proffered in support of any affirmative defense, those defenses were abandoned (*see U.S. Bank N.A. v Gonzalez*, 172 AD3d 1273, 1275 [2d Dept 2019]; *Flagstar Bank v Bellafiore*, 94 AD3d 1044 [2d Dept 2012]; *Wells Fargo Bank Minnesota, N.A v Perez*, 41 AD3d 590 [2d Dept 2007]).

The assertion the motion must be denied because no discovery has been conducted is unavailing as Defendant offered nothing to demonstrate Plaintiff is in exclusive possession of facts which would establish a viable defense to summary judgment (*see Island Fed. Credit Union v I&D Hacking Corp.*, 194 AD3d 482 [1st Dept 2021]).

The branch of Plaintiff's motion for a default judgment against the non-appearing parties is granted (*see CPLR §3215; SRMOF II 2012-I Trust v Tella*, 139 AD3d 599, 600 [1st Dept 2016]).

The branch of Plaintiff's motion to amend the caption is granted (*see generally CPLR §3025; JP Morgan Chase Bank, N.A. v Laszio*, 169 AD3d 885, 887 [2d Dept 2019]).

Accordingly, it is

ORDERED that Plaintiff is awarded summary judgment against the appearing parties and a default judgment against the non-appearing defendants; and it is further

ORDERED that that **Matthew D. Hunter III, Esq., 108-18 Queens Blvd Forest Hills, NY 10016 (718) 309-1660** is hereby appointed Referee in accordance with RPAPL § 1321 to compute the amount due to Plaintiff and examine whether the tax parcel can be sold in parcels; and it is further

**850045/2023   651 WEST 169TH LENDER LLC vs. PANZER BUILDING CORP. ET AL
Motion No.  003**

Page 3 of 5

ORDERED that in the discretion of the Referee, a hearing may be held, and testimony taken; and it is further

ORDERED that by accepting this appointment the Referee certifies that he is in compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR Part 36), including, but not limited to §36.2 (c) ("Disqualifications from appointment"), and §36.2 (d) ("Limitations on appointments based upon compensation"), and, if the Referee is disqualified from receiving an appointment pursuant to the provisions of that Rule, the Referee shall immediately notify the Appointing Judge; and it is further

ORDERED that, pursuant to CPLR 8003(a), and in the discretion of the court, a fee of $350 shall be paid to the Referee for the computation of the amount due and upon the filing of his report and the Referee shall not request or accept additional compensation for the computation unless it has been fixed by the court in accordance with CPLR 8003(b); and it is further

ORDERED that the Referee is prohibited from accepting or retaining any funds for himself or paying funds to himself without compliance with Part 36 of the Rules of the Chief Administrative Judge; and it is further

ORDERED that if the Referee holds a hearing or is required to perform other significant services in issuing the report, the Referee may seek additional compensation at the Referee's usual and customary hourly rate; and it is further

ORDERED that plaintiff shall forward all necessary documents to the Referee and to defendants who have appeared in this case within 30 days of the date of this order and shall *promptly* respond to every inquiry made by the referee (promptly means within two business days); and it is further

ORDERED that if defendant(s) have objections, they must submit them to the referee within 14 days of the mailing of plaintiff's submissions; and include these objections to the Court if opposing the motion for a judgment of foreclosure and sale; and it is further

ORDERED the failure by defendants to submit objections to the referee shall be deemed a waiver of objections before the Court on an application for a judgment of foreclosure and sale; and it is further

ORDERED that plaintiff must bring a motion for a judgment of foreclosure and sale within 30 days of receipt of the referee's report; and it is further

ORDERED that if plaintiff fails to meet these deadlines, then the Court may *sua sponte* vacate this order and direct plaintiff to move again for an order of reference and the Court may *sua sponte* toll interest depending on whether the delays are due to plaintiff's failure to move this litigation forward; and it further

ORDERED that counsel for plaintiff shall serve a copy of this order with notice of entry upon the County Clerk (60 Centre Street, Room 141B) and the General Clerk's Office (60 Centre Street, Room 119), who are directed to mark the court's records to reflect the parties being removed pursuant hereto; and it is further

850045/2023   651 WEST 169TH LENDER LLC vs. PANZER BUILDING CORP. ET AL        Page 4 of 5
Motion No. 003

ORDERED that such service upon the County Clerk and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website at the address (www.nycourts.gov/supctmanh)]; and it is further

All parties are to appear for a virtual conference via Microsoft Teams on **February 8, 2024, at 10:40 a.m.** If a motion for judgment of foreclosure and sale has been filed Plaintiff may contact the Part Clerk Tamika Wright (tswright@nycourt.gov) in writing to request that the conference be cancelled. If a motion has not been made, then a conference is required to explore the reasons for the delay.

| 10/12/2023 | | | | FRANCIS A. KAHN, III, A.J.S.C. |
|---|---|---|---|---|
| **DATE** | | | | HON. FRANCIS A. KAHN III J.S.C. |
| CHECK ONE: | | CASE DISPOSED | | X NON-FINAL DISPOSITION |
| | X | GRANTED | DENIED | GRANTED IN PART · OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | X FIDUCIARY APPOINTMENT · REFERENCE |

850045/2023   651 WEST 169TH LENDER LLC vs. PANZER BUILDING CORP. ET AL
Motion No.  003

Page 5 of 5

5 of 5

Exhibit C

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

651 WEST 169TH LENDER LLC,

                  Plaintiff,

          - v -

PANZER BUILDING CORP., NANCY J. HABER, NEW
YORK CITY DEPARTMENT OF FINANCE, CITY OF NEW
YORK ENVIRONMENTAL CONTROL BOARD, NEW
YORK STATE DEPARTMENT OF TAXATION AND
FINANCE,

                  Defendants.

Index No.: 850045/2023

---

## OATH OF REFEREE TO COMPUTE

I, Matthew D. Hunter III, Esq., the Referee appointed by a Decision and Order on Motion

of the Court dated October 12, 2023 and entered on October 20, 2023 (the "Order") to ascertain

and compute the amount due to the Plaintiff for principal and interest and otherwise under a certain

note and mortgage, which this action was brought to foreclose, and to examine and report whether

the subject mortgaged premises should be sold in one or more parcels, do solemnly swear that I

will faithfully and fairly determine the questions so referred to me and make a just and true report

thereon according to the best of my understanding and as the Order requires.

Matthew D. Hunter III, Esq.

Subscribed and sworn to before me
this /5 day of Nov - 2023

Notary

JASON W. STERN
NOTARY PUBLIC , State of New York
NO. 02ST6094082
Qualified in New York County
Commission Expires June 16, 2027

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

651 WEST 169TH LENDER LLC,

          Plaintiff,

- v -

PANZER BUILDING CORP., NANCY J. HABER, NEW
YORK CITY DEPARTMENT OF FINANCE, CITY OF NEW
YORK ENVIRONMENTAL CONTROL BOARD, NEW
YORK STATE DEPARTMENT OF TAXATION AND
FINANCE,

          Defendants.

Index No.: 850045/2023

**REPORT OF REFEREE**
**TO COMPUTE**

---

TO THE SUPREME COURT, COUNTY OF NEW YORK:

Pursuant to a Decision and Order on Motion of the Court dated October 12, 2023 and entered on October 20, 2023, whereby it was referred to the undersigned, Matthew D. Hunter III, Esq., as Referee, to ascertain and compute the amount due to Plaintiff for principal and interest and otherwise under the note and mortgage which this action was brought to foreclose, and to examine and report whether the mortgaged premises should be sold in one or more parcels, I do report that:

1.    Before proceeding to review the testimony, I first was duly sworn faithfully and fairly to determine the questions referred to me, and to make a just and true report thereof, according to the best of my understanding.

2.    I have computed and ascertained the amount due to Plaintiff under the subject note and mortgage, and I find, and accordingly report that there is due and owing to Plaintiff for principal, interest, charges, and fees, as of October 23, 2023, the sum of **$6,051,488.00**, plus per diem interest in the amount **$2,599.02** for each day thereafter.

3.     Schedule A hereto sets forth my computation of the sums due to Plaintiff on the

note and mortgage sought to be foreclosed as of October 23, 2023.

4.     Schedule B hereto is a list of the documentary evidence introduced before me.

5.     Schedule C hereto is the Affidavit of Amount Due of Ralph Dweck (without

exhibits), introduced before me, showing the amounts due for principal, interest and fees, the

period of computation of the interest and its rate and other amounts.

6.     I have made inquiry as to the advisability of selling the mortgaged premises in one

or more parcels. Because the mortgaged premises is a single tax lot, improved by a single building,

I find that the mortgaged premises should be sold in one parcel.

            This report is respectfully submitted.

Dated:   New York, New York
          _Nuv. 15_, 2023

                                              _Mur. U._

                                              Matthew D. Hunter III, Esq.

## SCHEDULE A

## COMPUTATION

| | |
|---|---|
| Principal: | $3,898,523.78 |
| Default Interest to 1/4/22: | $506,808.09 |
| Late Charges: | $21,683.00 |
| Tax Escrow: | -$40,471.71 |
| Holdback: | -$10,000.00 |
| Forbearance Fee: | -$38,985.23 |
| Default Interest from 1/5/22 to 10/23/23: | $1,704,957.12 |
| Force Placed Insurance: | $8,973.19 |
| | |
| Total: | $6,051,488.24 |

**SCHEDULE B**

**DOCUMENTARY EVIDENCE**

1. The Note (Exhibit 1)

2. The Mortgage (Exhibit 2)

3. The Assignment of Mortgage (Exhibit 3)

## SCHEDULE C

## DWECK AFFIDAVIT OF AMOUNT DUE

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

651 WEST 169TH LENDER LLC,

Plaintiff,

- v -

PANZER BUILDING CORP., NANCY J. HABER, NEW
YORK CITY DEPARTMENT OF FINANCE, CITY OF NEW
YORK ENVIRONMENTAL CONTROL BOARD, NEW
YORK STATE DEPARTMENT OF TAXATION AND
FINANCE,

Defendants.

Index No.: 850045/2023

**AFFIDAVIT OF**
**AMOUNT DUE**

STATE OF NEW YORK )
                   ) ss.:
COUNTY OF NEW YORK )

RALPH DWECK, being duly sworn, deposes and says:

1.      I am authorized to submit this affidavit on behalf of the Plaintiff 651 West 169th

Lender LLC. The facts and matters set forth in this affidavit are based upon my personal

knowledge and/or my review of 651 West 169th Lender LLC's business records, the business

records of 651 West 169th Lender LLC's predecessor-in-interest, or the publicly-available

documents maintained by the Clerk of the Court.

2.      In the regular performance of my job functions, I am familiar with the business

records maintained by 651 West 169th Lender LLC in its loan portfolio. The records in 651 West

169th Lender LLC's possession include (a) documents which 651 West 169th Lender LLC

generates in the ordinary course of its business operations (which include data compilations,

electronically imaged documents, and others) that are made at or near the time by, or from

information provided by, persons with knowledge of the activity and transactions reflected in such

records, and are kept in the course of regularly conducted business activity, and (b) also includes

all of the loan documents purchased from its predecessors-in-interest and all file documents that were formally in the possession of said predecessors-in-interest. In connection with the making of this affidavit, I have personally examined these business records reflecting data and information pertinent to the subject loan.

3.      With respect to the loan underlying this foreclosure action (defined below as the "Loan"), 651 West 169th Lender LLC's predecessor-in-interest is Signature Bank. Signature Bank's business records concerning the Loan, including, but not limited to, transactional documents, default notices, appraisals, rent rolls, and loan/payment histories, were incorporated into 651 West 169th Lender LLC's business records when it acquired the Loan and 651 West 169th Lender LLC routinely relies upon said records in the conduct of its business and keeps said records in the ordinary course of its business.

**BACKGROUND**

4.      On February 14, 2020, the Borrower, for good and valuable consideration, executed and delivered to Signature Bank an Amended, Consolidated and Restated Mortgage Note to evidence its obligations for a loan (the "Loan") in the original principal amount of $4,000,000.00 (together with any amendments and/or modifications, the "Note").

5.      As security for the payment of the Note, the Borrower, as mortgagor, executed, acknowledged, and delivered to Signature Bank, as mortgagee, the Mortgage Consolidation, Modification, Security Agreement and Fixture Filing dated February 14, 2020, with attached Restated Mortgage (together with any amendments and/or modifications, the "Mortgage").

6.      Pursuant to the Mortgage, the Borrower pledged and assigned to Signature Bank all of its estate, right, title and interest in and to that certain real property, and the improvements and chattel located thereon, in the County of New York, State of New York, having an address of

2

651 West 169th Street, New York, New York a/k/a 226/230 Fort Washington Avenue, New York,
New York (Block: 2138, Lot: 132) on the official Tax Map of the City of New York, and more
particularly described in Schedule A of the Mortgage (the "Mortgaged Premises").

7. Pursuant to an assignment of mortgage dated December 3, 2021, Signature Bank
assigned all of its right, title and interest in and to the Note and the Mortgage to 651 West 169th
Lender LLC. Signature Bank also executed and delivered to 651 West 169th Lender LLC an
allonge with respect to the Note.

8. 651 West 169th Lender LLC is the sole, true, and lawful owner and holder of the
Note and the Mortgage and will hereinafter be referred to as "Plaintiff.

9. Annexed hereto and marked Schedule A is a list of the loan documents referred to
in this Affidavit. The Note, the Mortgage and the Assignment of Mortgage are annexed hereto as
well as Exhibits 1, 2, and 3, respectively.

10. The above captioned commercial mortgage foreclosure action was commenced by
the filing of a Summons and Complaint on February 7, 2023.

11. By Decision and Order on Motion of the Court dated October 12, 2023 and entered
on October 20, 2023 (the "Order of Reference"), the Court, among other things, appointed
Matthew D. Hunter III, Esq., as referee to compute the amount due to Plaintiff upon the Note and
the Mortgage and to determine whether the Mortgaged Premises should be sold in one or more
parcels.

12. On October 20, 2023, the Order of Reference was served with notice of entry on all
defendants and the court-appointed referee.

3

## AMOUNT DUE UNDER THE NOTE AND THE MORTGAGE

13.     On or about June 24, 2021, the Borrower, without the mortgagee's written consent, further mortgaged and encumbered the Mortgaged Premises by executing a Collateral Mortgage (the "Collateral Mortgage") in favor of Eric Goldfine, as Trustee of the Eric Goldfine Self Employed Retirement Plan and Trust which is an event of default under the Mortgage.

14.     Pursuant to the terms of the Note, the Borrower promised to make monthly payments of principal and interest until the Maturity Date (as such term is defined in the Note) at which time the principal balance of the Note and all accrued and unpaid interest thereon was payable in full.

15.     The Mortgage provides, among other things, that the Borrower's failure to make any payment due under the Note is an event of default under the Mortgage and upon such an event of default, Plaintiff may institute foreclosure proceedings and sell the Mortgaged Premises according to law.

16.     The Borrower failed to make the monthly payment of principal and interest due under the Note on September 10, 2021, and each month thereafter. As a result, one or more events of default have occurred under the Note and the Mortgage.

17.     On or about February 24, 2022, the Borrower and Plaintiff entered into a Forbearance Agreement (the "Forbearance Agreement") pursuant to which the Borrower acknowledged the foregoing events of default and Plaintiff agreed to forbear from exercising its rights and remedies so long as the Borrower, *inter alia*, repaid the Loan in full by June 24, 2022 (the "Termination Date").

18.     The Borrower was obligated to pay all outstanding principal and interest due under the Note on the extended Termination date of July 24, 2022, but the Borrower failed to do so. As

4

a result, one or more events of default have occurred under the Note and the Mortgage (and the

Borrower also breached the Forbearance Agreement).

19. As of October 23, 2023, the aggregate amount due under the Note and the Mortgage

is as follows:

| | |
|---|---|
| Principal: | $3,898,523.78 |
| Default Interest to 1/4/22: | $506,808.09 |
| Late Charges: | $21,683.00 |
| Tax Escrow: | -$40,471.71 |
| Holdback: | -$10,000.00 |
| Forbearance Fee: | -$38,985.23 |
| Default Interest from 1/5/22 to 10/23/23: | $1,704,957.12 |
| Force Placed Insurance: | $8,973.19 |
| | |
| Total: | $6,051,488.24 |

20. Accordingly, as of October 23, 2023, there is due and owing the sum of

**$6,051,488.24,** plus per diem interest in the amount of **$2,599.02** for each day thereafter.[1]

21. Because the Mortgaged Premises is a single tax lot, improved by a single building,

Plaintiff submits that it should be sold in one parcel.

RALPH DWECK

Sworn to before me this
30th day of October 2023

Notary Public

CAMILLE FALZARANO
Notary Public, State of New York
Reg. No O1FA6075263
Qualified in Nassau County
Commission Expires June 3, 2026

---

[1] These amounts are exclusive of Plaintiff's attorneys' fees and expenses, the reimbursement of which will be sought by Plaintiff in future proceedings before the Court.

5

**SCHEDULE A**

**DOCUMENTARY EVIDENCE**

1. The Note (Exhibit 1)

2. The Mortgage (Exhibit 2)

3. The Assignments of Mortgage (Exhibit 3)

6

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| 651 WEST 169TH LENDER LLC,<br><br>                              Plaintiff,<br><br>                        - v -<br><br>PANZER BUILDING CORP., NANCY J. HABER, NEW YORK CITY DEPARTMENT OF FINANCE, CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD, NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE,<br><br>                              Defendants. | Index No.: 850045/2023<br><br>**AFFIRMATION OF SERVICE** |

**James M. Andriola, Esq.**, an attorney duly admitted to practice in the Courts of the State of New York, affirms as follows under penalty of perjury:

I am a member of Andriola Law, PLLC.  I am not a party to the action, am over 18 years of age and reside in the State of New York.  On November 18, 2023, I served the foregoing **Oath of Referee to Compute and Report of Referee to Compute**, by causing true and correct copies of the aforesaid documents to be filed and served electronically via the Court's NYSCEF System and by first class mail as follows:

Michael S. Haber, Esq.
Law Offices of Michael S. Haber
11 Broadway, Suite 615
New York, New York 10004
*Attorney for Defendants*
*Panzer Building Corp.*
*and Nancy J. Haber*
*Borrower/Owner of Equity of Redemption and Guarantor*
**Via NYSCEF**

Michele Mirro, Esq.
NYC Department of Finance
375 Pearl Street 30th Floor
New York, NY  10038
*Attorneys for the New York City Department of Finance*
*and City of New York Environmental Control Board*
**Via NYSCEF**

New York State Department of Taxation and Finance
Attention: Office of Counsel
Building 9, W.A. Harriman Campus
Albany, New York 12227
*Non-Appearing Defendant*
**Via First Class Mail**

Matthew D. Hunter III, Esq.
108-18 Queens Boulevard
Forest Hills, New York 10016
*Referee*
**Via First Class Mail**


Dated:  New York, New York
        November 18, 2023

                                        /s/ James M. Andriola

Exhibit D

23-11924-jpm    Doc 7    Filed 12/15/23    Entered 12/15/23 17:34:50    Main Document
Pg 43 of 94

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X
651 WEST 169TH LENDER LLC,

                            Plaintiff,

              -against-

PANZER BUILDING CORP., NANCY J. HABER, NEW YORK CITY DEPARTMENT OF FINANCE, CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD, NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE and JOHN DOE #1 THROUGH JOHN DOE #20 (said John Doe defendants being fictitious, it being intended to name all other parties who may have some interest in or lien upon the premises sought to be foreclosed),

                         Defendants.
-------------------------------------------------------------X

Index No.: 850045/2023

**AFFIRMATION IN SUPPORT OF MOTION FOR CONTEMPT, TO APPROVE SECONDARY APPOINTMENTS AND APPROVAL OF REPAIRS**

Assigned To:
Hon. Francis A. Kahn, III, J.S.C., Part 32

      Edward A. Vincent, Esq., an attorney admitted to practice law in and before the courts of the State of New York, affirms that the following statements are true and accurate and subject to the penalties of perjury:

      1.    This affirmation is based upon my personal knowledge and recollection of the facts herein and my personal examination of my business records. The exhibits referenced herein by NYSCEF document numbers are expressly incorporated and made a part of the record of my

motion for contempt, for secondary appointments and approval of repairs. This motion has been brought via order to show cause due to the requested relief of a temporary restraining order.

2.      It is my regular practice to make business records at or near the time or occurrence of the activities and transactions reflected in these records.  This affirmation is based upon the books and business records made and maintained by me in the ordinary course of business, as well as my own investigation and personal knowledge of this matter.   The documents referenced herein were produced from these books and business records.

3.      I submit this affirmation in support of my order to show cause, inter alia, to adjudge defendants Panzer Building Corp. and Nancy J. Haber (the "Defendants") to be in contempt of this Court's order and my notice to attorn compelling the defendants to turn over immediate, complete, and unfettered access and control of the real properties known as 651 West 169th Street a/k/a 226/230 Fort Washington Avenue, New York, New York (collectively, the "Premises") and account for all rents received, to approve

2

the appointment of a property manager and special landlord-tenant counsel and to approve repairs of the elevator located at Premises.

4.      I was appointed by this court (Kahn, J.) on February 28, 2023 to serve as the Temporary Receiver (the "Receiver") for the rents and profits of the Premises. The order of appointment can be located at NYSCEF Doc. No. 22.

5.      I duly qualified as such Receiver by having electronically filed a Bond, Oath of Receiver, and initial Notice to Attorn with the Court on August 8, 2023 pursuant to the aforesaid Order, which conditioned same upon lawful performance of my duties as Receiver. The bond, oath, and initial notice to attorn can be located at NYSCEF Doc. Nos. 60, 59, and 61.

6.      Upon information and belief, the Premises consists of one parcel and is a mixed-use property with a monthly rent roll of $49,371.09 and annual rent roll of $592,273.08. A copy of the rent roll prepared by Defendants' attorney is annexed hereto as Exhibit "A".

7.      The Premises is owned by defendant Panzer Building Corp.

3

8.    Upon information and belief, Nancy J. Haber is a member of Panzer Building Corp.

9.    The Defendants have refused and failed to cooperate with the Receiver and comply with the Court's Order and notices to attorn. The Defendants have refused and failed to provide keys, leases, agreements, security deposits, and correspondence to the Receiver. The Defendants have also refused and failed to provide an accounting for all rents since August 7, 2023.

10.    The Defendants have also continued to issue leases and collect rents to date, including the attached leases for Unit 34 to Belmeni Barake, Tamara Josefina, and Barake De Belmeni Diana and Units 2 and 21 to Marco Antonio Vazquez and Sandra Ortega. Copies of the lease agreements showing Defendants' willful contempt of this Court's order is annexed hereto as Exhibit "B".

11.    These leases must be declared to be void since the Defendants did not have the authority to grant them.

4

12. "A court of record has power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which as right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced [if] a party to the action or special proceeding, an attorney, counsellor, or other person…for any other disobedience to a lawful mandate of the court." Judiciary Law § 753(A)(3).

13. It has been expressly held that "[t]he mere act of disobedience…is sufficient to sustain a finding of civil contempt if such disobedience defeats, impairs, impedes or prejudices the rights of a party." See McNulty v. McNulty, 81 A.D.2d 581, 437 N.Y.S.2d 438 (2d Dept. 1981). Intent or willfulness is not required to hold a person in contempt for disobeying a court order; the mere act of disobedience, regardless of its motive, is sufficient to sustain a finding of civil contempt if such disobedience defeats, impairs, impedes or prejudices the rights of a party. Yalkowsky v. Yalkowsky, 93 A.D.2d 834, 461 N.Y.S.2d 54 (2d Dept. 1983).

5

23-11924-jpm    Doc 7    Filed 12/15/23    Entered 12/15/23 17:34:50    Main Document
Pg 48 of 94

14.    "Where it is not shown that such an actual loss or injury has been caused, a fine may be imposed, not exceeding the amount of the complainant's costs and expenses, and two hundred and fifty dollars in addition thereto, and must be collected and paid, in like manner." Judiciary Law § 773.

15.    The court may award reimbursement of a party's actual expenses reasonably incurred and reasonable attorney's fees resulting from frivolous conduct.  22 N.Y.C.R.R. § 130-1.1.

16.    Coercive incarceration, as a sanction for contempt, may be imposed immediately or after a set period during which the contemnor must comply with the court order. Freihofner v. Freihofner, 2005 WL 1798362, *11 (Sup.Ct., Westchester Co.).

17.    In view of the foregoing, I request that the Court adjudge Defendants to be in ongoing **CONTEMPT** for willful disobedience of this Court's order and my Notice to Attorn.

18.   I request that the Court compel Defendants to turn over and send to the Receiver, all keys, rental payments, rents, tenant security deposits, papers, receipts, leases, subleases, utility bills, and/or contracts and agreements pertaining to the subject Premises and to turn over to the Receiver immediate, complete and unfettered access to the subject Premises, including a full accounting of all income and expenses for the Premises after August 7, 2023 and to turn over the corresponding net proceeds and security deposits to the Receiver within 10 days of service of notice of entry of this Court's order.

19.   I request that the Court grant a judgment against the Defendants in favor of the Receiver for the Receiver's legal fees and costs incurred for the filing of the Receiver's motion in the amount of $2,800.00.

20.   I request that the Court direct representatives of Panzer Building Corp. and Nancy J. Haber to appear on the return date of this motion to personally explain their actions and guarantee their full compliance.

21.　I request that the Court approve the appointment and retention of Barton Schwartz of Barton Schwartz & Associates as property manager for the Premises, <u>nunc pro tunc</u>, as of the date of the appointment of the Receiver on February 28, 2023.

22.　I request that the Court approve the appointment and retention of Adam Kalish, Esq. as special landlord-tenant counsel for the Receiver, <u>nunc pro tunc</u>, as of the date of the appointment of the Receiver on February 28, 2023, for all nonpayment and eviction proceedings conducted in the Civil Court of the City of New York, New York County, and the Housing Parts thereof and grant permission to the Special Landlord-Tenant Counsel to pursue all rent arrears from the date of service of the Receiver's Notice to Attorn.

23.　Upon information and belief the above individuals whom I seek to appoint with the Court's approval, are qualified under the Part 36 Rule of Court of the Office of Court Administration (OCA).

24.　I request that the Court adjudge all advances made by plaintiff to be secured by plaintiff's mortgage and that such advances shall be

8

added to and included in the debt thereupon due and in the judgment of foreclosure and sale, to the extent that the rents, issues, and profits collected by the Receiver and remaining in the Receiver's fiduciary account are insufficient to reimburse plaintiff for such advances. Advances have been made due to the uncooperativeness of the defendants and tenants and possible need for eviction/non-payment proceedings.

25.   I request that the Court compel all New York City and New York State agencies, not-for-profit entities, housing programs, affordable housing corporations, including, but not limited to, Section 8 Administration, New York City Department of Finance and New York City Department of Housing Preservation and Development, to acknowledge the Receiver and amend their records and remit payments to "Edward A. Vincent, Esq. as Temporary Receiver" for tenants participating in any such housing programs and/or tenants receiving payments or subsidies, either directly or indirectly, as payment of rent for the Premises.

26.   Additionally, the elevator located at the Premises needs repairs. The elevator is a vital function of the Premises and requires immediate

FILED: NEW YORK COUNTY CLERK 11/06/2023 03:07 PM
INDEX NO. 850045/2023
NYSCEF DOC. NO. 67
23-11924-jpm    Doc 7    Filed 12/15/23    Entered 12/15/23 17:34:50    Main Document
RECEIVED NYSCEF: 11/06/2023
Pg 52 of 94

repairs. A copy of the estimate for the proposed work is annexed hereto as Exhibit "C".

27.    Plumbing repairs are needed in accordance with the attached proposal from M. Samba Plumbing & Repairs. A copy of the proposal is annexed hereto as Exhibit "D".

28.    Repairs for leaks in the wall and roof are required in accordance with the attached proposal from US Sheltech NY Inc. A copy of the proposal is annexed hereto as Exhibit "E".

29.    The order of appointment requires prior court approval of improvements or substantial repairs to the Premises exceeding $1,000, upon notice to Plaintiff. A copy of the order of appointment is annexed hereto as Exhibit "F".

30.    The Receiver also requests to raise the minimum from $1,000 to $4,500 for prior court approval of repairs due to the condition of the Premises.

31.    I request that the Court grant such other, further, and different

relief to the Receiver as this court deems just and proper.


32.    No previous application for the relief requested herein has been

made to this or any other court.


Dated:        November 3, 2023


                              */s/ Edward A. Vincent*
                              Edward A. Vincent, Esq.

## CERTIFICATE OF COMPLIANCE

The foregoing affirmation/memorandum was prepared on a computer. A proportionally spaced typeface was used, as follows:

Name of typeface: Arial

Point Size:          14

Line Spacing:        Double

Pursuant to rule 22 NYCRR 202.8b, the total number of words in the affirmation/memorandum, inclusive of point heading and footnotes and executive pages containing the table of contents, table of citations, proof of service, certificate of compliance, or any authorize addendum containing statues, rules, regulations, etc., is 1,643 words.

Dated:     Whitestone, New York
           November 3, 2023

                              Borchert & LaSpina, P.C.

                    By:    */s/ Edward A. Vincent*
                           Edward A. Vincent, Esq.
                           *Temporary Receiver*
                           19-02   Whitestone   Expressway,
                           Suite 302
                           Whitestone, NY 11357
                           Tel. (718) 767-3333

FILED: NEW YORK COUNTY CLERK 11/06/2023 03:07 PM
INDEX NO. 850045/2023
NYSCEF DOC. NO. 68
RECEIVED NYSCEF: 11/06/2023
23-11924-jpm Doc 7 Filed 12/15/23 Entered 12/15/23 17:34:50 Main Document
Pg 55 of 94

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------x

651 WEST 169TH LENDER LLC,

                     Plaintiff,

          v.

PANZER BUILDING CORP., NANCY J.
HABER, NEW YORK CITY DEPARTMENT OF
FINANCE, CITY OF NEW YORK
ENVIRONMENTAL CONTROL BOARD, NEW
YORK STATE DEPARTMENT OF TAXATION
AND FINANCE and JOHN DOE #1
THROUGH JOHN DOE #20 (said John Doe
defendants being fictitious, it being intended to
name all other parties who may have some
interest in or lien upon the premises sought to
be foreclosed),

                     Defendants.

-----------------------------------------------------------------x

Index No. 850045/2023

**AFFIRMATION OF
EMERGENCY**

       Edward A. Vincent, Esq., an attorney admitted to practice law in and

before the courts of the State of New York, affirms that the following

statements are true and accurate and subject to the penalties of perjury:

       1.    This affirmation is based upon my personal knowledge and

recollection of the facts herein and my personal examination of my

business records. The exhibits referenced herein by NYSCEF document

FILED: NEW YORK COUNTY CLERK 11/06/2023 03:07 PM
INDEX NO. 850045/2023
NYSCEF DOC. NO. 88
23-11924-jpm   Doc 7   Filed 12/15/23   Entered 12/15/23 17:34:50   Main Document
RECEIVED NYSCEF: 11/06/2023
Pg 56 of 94

numbers are expressly incorporated and made a part of the record of my motion for contempt, for secondary appointments and approval of repairs. This motion has been brought via order to show cause due to the requested relief of a temporary restraining order.

2.     It is my regular practice to make business records at or near the time or occurrence of the activities and transactions reflected in these records. This affidavit is based upon the books and business records made and maintained by me in the ordinary course of business, as well as my own investigation and personal knowledge of this matter.  The documents referenced herein were produced from these books and business records.

3.     I submit this emergency affirmation in support of the portion of of my motion, inter alia, to enjoin defendants Panzer Building Corp. and Nancy J. Haber ("Defendants") from interfering from the Receiver's management and control of the real property known as 651 West 169th Street a/k/a 226/230 Fort Washington Avenue, New York, New York (collectively, the "Premises") and to approve urgent repairs to the Premises.

4.     The Defendants continue to enter into leases and collect rents after the issuance of this Court's order of appointment. The Receivership requires an order from this Court to enjoin and restrain Defendants from collecting rents and interfering with the Receivership's management and control of the Premises. Copies of the leases showing Defendants willful contempt of this Court's order is annexed hereto as Exhibit "B".

5.     Additionally, several critical repairs are needed for the Premises which require approval of this Court.

6.     The elevator located at the Premises is in need of repairs. The elevator is a vital function of the Premises and requires immediate repairs. A copy of the estimate for the proposed work is annexed hereto as Exhibit "C".

7.     Plumbing repairs are needed in accordance with the attached proposal from M. Samba Plumbing & Repairs. A copy of the proposal is annexed hereto as Exhibit "D".

FILED: NEW YORK COUNTY CLERK 11/06/2023 03:07 PM
INDEX NO. 850045/2023

NYSCEF DOC. NO. 68

23-11924-jpm   Doc 7   Filed 12/15/23   Entered 12/15/23 17:34:50   Main Document

RECEIVED NYSCEF: 11/06/2023

Pg 58 of 94

8. Repairs for leaks in the wall and roof are required in accordance with the attached proposal from US Sheltech NY Inc. A copy of the proposal is annexed hereto as Exhibit "E".

9. These issues are urgent and critical to the Premises.

10. Notice of the emergency application was submitted to all parties on November 2, 2023 via e-mail that this application would be submitted on November 7, 2023. A copy of the e-mail is annexed hereto as Exhibit "G".

11. No previous application for the relief requested herein has been made to this or any other court.

Dated:      November 3, 2023

                                    */s/ Edward A. Vincent*
                                    Edward A. Vincent, Esq.

FILED: NEW YORK COUNTY CLERK 11/06/2023 03:07 PM
INDEX NO. 850045/2023
NYSCEF DOC. NO. 68
RECEIVED NYSCEF: 11/06/2023
23-11924-jpm    Doc 7    Filed 12/15/23    Entered 12/15/23 17:34:50    Main Document
Pg 59 of 94

## CERTIFICATE OF COMPLIANCE

The foregoing affirmation/memorandum was prepared on a computer. A proportionally spaced typeface was used, as follows:

Name of typeface: Arial

Point Size:         14

Line Spacing:        Double

Pursuant to rule 22 NYCRR 202.8b, the total number of words in the affirmation/memorandum, inclusive of point heading and footnotes and executive pages containing the table of contents, table of citations, proof of service, certificate of compliance, or any authorize addendum containing statues, rules, regulations, etc., is 495 words.

Dated:    Whitestone, New York
          November 3, 2023

                              Borchert & LaSpina, P.C.

                         By:    */s/ Edward A. Vincent*
                                Edward A. Vincent, Esq.
                                *Temporary Receiver*
                                19-02   Whitestone   Expressway,
                                Suite 302
                                Whitestone, NY 11357
                                Tel. (718) 767-3333

# EXHIBIT A

## CERTIFICATE

### (RENT ROLL)

The undersigned, in order to induce **SIGNATURE BANK**, a New York banking corporation, to make a credit facility to the undersigned in the principal amount of $4,000,000.00, secured by, among other things, mortgages which have been consolidated and modified pursuant to a Mortgage Consolidation, Modification, Security Agreement and Fixture Filing in that aggregate amount of $4,000,000.00 (the "Mortgage") encumbering the premises known as 651 West 169th Street, New York, New York 10032 (being hereinafter referred to as the "Premises"), **DOES HEREBY CERTIFY** that (i) annexed hereto is the rent roll of all of the leases and tenancies at the Premises, (ii) all of the said leases and tenancies are current and in full force and effect and are by their respective terms or by separate agreement expressly subject and subordinate to the lien of the Mortgage, and (iii) there exists no default or event which with notice and/or lapse of time would constitute a default on the part of the undersigned as landlord under any such lease or tenancy.

This Certificate is executed and delivered in order to induce SIGNATURE BANK to make to the undersigned the credit facility referred to above, and this Certificate is made and delivered with the knowledge that SIGNATURE BANK in making the said credit facility will rely upon the truth of the statements contained in this Certificate.

**IN WITNESS WHEREOF,** the undersigned has executed this Certificate as of this 14th day of February, 2020.

PANZER BUILDING CORP.

By: _____
Name: Nancy J. Haber
Title:  President

FF\9102829.2

FILED: NEW YORK COUNTY CLERK 02/06/2023 08:57 PM

NYSCEF DOC. NO. 19

INDEX NO. 850045/2023

RECEIVED NYSCEF: 02/06/2023

23-1194-jpm   Doc 7   Filed 12/15/23   Entered 12/15/23 17:34:50   Main Document

Pg 62 of 94

Prepared By:
Michael S. Haber, Esq.
Law Offices of Michael S. Haber
11 Broadway, Suite 615
New York, New York 10004

Tel. (212) 791-6240
Cell (917) 561-7319
e-mail: HaberLawOffice@aol.com

# Rent Roll As Of February 11, 2020

### 651 West 169th Street, New York, New York [Owned by Panzer Building Corp.]

**Legend:  RS: Rent Stabilized; D : Decontrolled (free market); CL: Commercial**

| UNIT | RENT/MO. | STATUS | EXPIRES | NAME |
|------|----------|--------|---------|------|
| Store 1 | 10,486.00 | CL | 04/30/25 | Subway |
| Store 2 | 10,012.00 | CL | 04/30/25 | Deli |
| 1 | -- | RS | -- | [Vacant] |
| 2 | -- | RS | -- | [Vacant] |
| 21 | 980.36 | RS | 04/30/20 | Vazquez |
| 22 | 834.47 | RS | No Lease | Smith |
| 23 | 1,432.21 | RS | 08/31/21 | Laney |
| 24 | 2,200.00 | RS | 03/14/20 | de la Cruz |
| 31 | 970.34 | RS | 04/30/21 | Vazquez |
| 32 | 910.24 | RS | 09/30/20 | Tatar |
| 33 | 2,233.00 | RS | 07/31/20 | Kentros/Lau |
| 34 | 2,330.00 | RS | 08/31/21 | Brammage/Solis |
| 41 | 890.90 | RS | 10/31/21 | Flavio |
| 42/43 | 3,800.00 | D | 04/25/20 | Tafoya |
| 44 | 1,008.52 | RS | 10/30/21 | Jaen |
| 51 | 1,600.00 | RS | 05/15/20 | Musleh |
| 52 | 1,025.05 | RS | 10/31/21 | Sciarrone |
| 53 | 2,250.00 | RS | 08/31/21 | Feltus |
| 54 | 1,191.45 | RS | 10/31/21 | Stanford |
| 61 | 2,250.00 | RS | 06/30/20 | Kang |
| 62 | 1,011.50 | RS | 10/31/21 | Pieczonka |
| 63 | 868.84 | RS | 10/31/21 | Stankiewicz |
| 64 | 1,086.21 | RS | 11/30/20 | Platkiewitz |

Current Monthly rent roll: $ 49,371.09
Current Annual rent roll : $592,273.08

Note:  With two exceptions, all units are two-bedroom apartments (4½ rooms).  Apt. 1 is a 1-bedroom apartment, and 42/43 is 4 bedrooms.

**Building Description:**  651 West 169th Street is a five-story elevator apartment building in the gentrifying Washington Heights neighborhood of northern Manhattan, located two blocks north of Presbyterian Hospital, a major hospital in Manhattan.  It has been owned by Panzer Building Corp., and has remained in the same family, for 70 years.  The President of the corporation is Nancy J. Haber, whose father, Ira Panzer, was President and sole shareholder until his death in 1999.  Market monthly rent for the apartments, which are almost uniformly the same size, is about $2300.  As shown, the building has not yet reached its potential.  When it does so, rent roll will be greater than $800,000.

FILED: NEW YORK COUNTY CLERK 02/06/2023 08:57 PM
NYSCEF DOC. NO. 19

INDEX NO. 850045/2023

RECEIVED NYSCEF: 02/06/2023

23-11924-jpm   Doc 7   Filed 12/15/23   Entered 12/15/23 17:34:50   Main Document
Pg 63 of 94

# Signature Bank Rent Roll Acknowledgement Cover Page

| | |
|---|---|
| Borrower: | PANZER BUILDING CORPORATION |

| | | |
|---|---|---|
| Loan Amount | $ 4,000,000.00 | |
| Rate | 3.750% | |
| Amortization in years | 30 | (30 years, if interst only) |
| Monthly Debt Service | $18,524.62 | |
| Additional Monthly Debt Service | $ - | (make note in comments section) |

| | | | |
|---|---|---|---|
| Rent Roll Income | $ | 582,439.44 | (without vacancy factor) |
| Other Income | $ | - | |
| Total Income | $ | 582,439.44 | |
| | | | |
| Expenses | $ | 259,511.00 | (per COM/underwriting) |
| | | | |
| NOI | $ | 322,928.44 | |
| | | | |
| As Is DSCR | | 1.45 | |
| | | | |
| Reserve(s) | $ | - | (interest or holdback relating to vacancy) |
| Enhanced DSCR* | | 999.99 | |

I confirm that the rent roll provided at the closing is satisfactory, per the abovementioned calculations.

Loan Officer: _____

Date: 2/14/2020 _____

**Comments:**
The Bank exclude rental income from Unit 22 as there is no lease.

*Enhanced DSCR of 999.99 means that it is not applicable

FILED: NEW YORK COUNTY CLERK 02/06/2023 08:57 PM
NYSCEF DOC. NO. 7
24-11524-jpm    Doc 7    Filed 12/15/23    Entered 12/15/23 17:34:50    Main Document
Pg 64 of 94
INDEX NO. 850045/2023
RECEIVED NYSCEF: 02/06/2023

Prepared By:
Michael S. Haber, Esq.
Law Offices of Michael S. Haber
11 Broadway, Suite 615
New York, New York 10004

Tel. (212) 791-6240
Cell (917) 561-7319
e-mail: HaberLawOffice@aol.com

# Rent Roll As Of February 11, 2020

**651 West 169th Street, New York, New York  [Owned by Panzer Building Corp.]**

*Legend: RS: Rent Stabilized; D : Decontrolled (free market); CL: Commercial*

| UNIT | RENT/MO. | STATUS | EXPIRES | NAME |
|------|----------|--------|---------|------|
| Store 1 | 10,486.00 | CL | 04/30/25 | Subway |
| Store 2 | 10,012.00 | CL | 04/30/25 | Deli |
| 1 | -- | RS | -- | [Vacant] |
| 2 | -- | RS | -- | [Vacant] |
| 21 | 980.36 | RS | 04/30/20 | Vazquez |
| 22 | 834.47 | RS | No Lease | Smith |
| 23 | 1,432.21 | RS | 08/31/21 | Laney |
| 24 | 2,200.00 | RS | 03/14/20 | de la Cruz |
| 31 | 970.34 | RS | 04/30/21 | Vazquez |
| 32 | 910.24 | RS | 09/30/20 | Tatar |
| 33 | 2,233.00 | RS | 07/31/21 | Kentros/Lau |
| 34 | 2,330.00 | RS | 08/31/21 | Brammage/Solis |
| 41 | 890.90 | RS | 10/31/21 | Flavio |
| 42/43 | 3,800.00 | D | 04/25/20 | Tafoya |
| 44 | 1,008.52 | RS | 10/30/21 | Jaen |
| 51 | 1,600.00 | RS | 05/15/20 | Musleh |
| 52 | 1,025.05 | RS | 10/31/21 | Sciarrone |
| 53 | 2,250.00 | RS | 08/31/21 | Feltus |
| 54 | 1,191.45 | RS | 10/31/21 | Stanford |
| 61 | 2,250.00 | RS | 06/30/20 | Kang |
| 62 | 1,011.50 | RS | 10/31/21 | Pieczonka |
| 63 | 868.84 | RS | 10/31/21 | Stankiewicz |
| 64 | 1,086.21 | RS | 11/30/20 | Platkiewitz |

**Current Monthly rent roll: $ 49,371.09**
**Current Annual rent roll : $592,273.08**

Note:  With two exceptions, all units are two-bedroom apartments (4½ rooms).  Apt. 1 is a 1-bedroom apartment, and 42/43 is 4 bedrooms.

**Building Description:** 651 West 169th Street is a five-story elevator apartment building in the gentrifying Washington Heights neighborhood of northern Manhattan, located two blocks north of Presbyterian Hospital, a major hospital in Manhattan.  It has been owned by Panzer Building Corp., and has remained in the same family, for 70 years.  The President of the corporation is Nancy J. Haber, whose father, Ira Panzer, was President and sole shareholder until his death in 1999.  Market monthly rent for the apartments, which are almost uniformly the same size, is about $2300.  As shown, the building has not yet reached its potential.  When it does so, rent roll will be greater than $800,000.

FILED: NEW YORK COUNTY CLERK 11/06/2023 03:07 PM
NYSCEF DOC. NO. 70
23-11924-jpm   Doc 7   Filed 12/15/23   Entered 12/15/23 17:34:50   Main Document
Pg 65 of 94
INDEX NO. 850045/2023
RECEIVED NYSCEF: 11/06/2023

# EXHIBIT B

<div style="border:1px solid black">

### STANDARD FORM OF APARTMENT LEASE
#### (FOR APARTMENTS NOT SUBJECT TO THE RENT STABILIZATION LAW)
#### THE REAL ESTATE BOARD OF NEW YORK, INC.
©copyright 1988. All Rights Reserved. Reproduction in whole or in part prohibited.

</div>

**PREAMBLE:** This lease contains the agreements between You and Owner concerning Your rights and obligations and the rights and obligations of Owner. You and Owner have other rights and obligations which are set forth in government laws and regulations.

You should read this Lease and all of its attached parts carefully. If you have any questions, or if you do not understand any words or statements, get clarification. Once you and Owner sign this Lease You and Owner will be presumed to have read it and understood it. You and Owner admit that all agreements between You and Owner have been written into this Lease. You understand that any agreements made before or after this Lease was signed and not written into it will not be enforceable.

THIS LEASE is made on          August          19          2023          between
                            month          day          year

Owner, Panzer Building Corp

whose address is 544 E 86 ST Apt 14E , New York NY 10028

and You, the Tenant, Belmeni Barake Tamara Josefina, Barake De Belmeni Diana

whose address is 651 W 169 st Apt 34 New York NY 10032

## 1.   APARTMENT AND USE

☛ Owner agrees to lease to You Apartment          34          on the          Third          floor in the building at

651 W 169 st                            Borough of Manhattan                            , City and State of New York.

You shall use the Apartment for living purposes only. The Apartment may be occupied by the tenant or tenants named above and by the immediate family of the tenant or tenants and by occupants as defined in and only in accordance with Real Property Law § 235-f.

## 2.   LENGTH OF LEASE

☛ The term (that means the length) of this Lease is          1          years,          0          months

          0          days, beginning on 9/7/23

and ending on 9/6/24                            . If You do not do everything You agree to do in this Lease, Owner may  have the right to end it before the above date. If Owner does not do everything that owner agrees to do in this Lease, You may have the right to end the Lease before ending date.

## 3.   RENT

☛ Your monthly rent for the Apartment is $ 2400

You must pay Owner the rent, in advance, on the first day of each month either at Owner's office or at another place that Owner may inform You of by written notice. You must pay the first month's rent to Owner when you sign this Lease if the lease begins on the first day of the month. If the Lease begins after the first day of the month, You must pay when you sign this lease (1) the part of the rent from the beginning date of this Lease until the last day of the month and (2 ) the full rent for the next full calendar month. If this Lease is a Renewal Lease, the rent for the first month of this Lease need not be paid until the first day of the month when the renewal term begins.

## 4.   SECURITY DEPOSIT

☛ You are required to give Owner the sum of $ 2400                            when You Sign this Lease as a security

deposit, which is called in law a trust. Owner will deposit this security in                            

                            bank at                            . If the Building contains six or more apartments, the bank account will earn interest. If You carry out all of your agreements in this Lease, at the end of each calendar year Owner or the bank will pay to Owner 1% interest on the deposit for administrative costs and to You all other interest earned on the security deposit.

If You carry out all of your agreements in this Lease and if You move out of the Apartment and return it to Owner in the same condition it was in when You first occupied it, except for ordinary wear and tear or damage caused by fire or other casualty, Owner will return to You the full amount of your security deposit and interest to which You are entitled within 60 days after this

**5.   IF YOU ARE UNABLE TO MOVE IN**

   A situation could arise which might prevent Owner from letting You move into the Apartment on the beginning date set in this Lease. If this happens for reasons beyond Owner's reasonable control, Owner will not be responsible for Your damages or expenses, and this Lease will remain in effect. However, in such case, this Lease will start on the date when You can move in, and the ending date in Article 2 will be changed to a date reflecting the full term of years set forth in Article 2. You will not have to pay rent until the move-in date Owner gives You by written notice, or the date You move in, whichever is earlier. If Owner does not give You notice that the move-in date is within 30 days after the beginning date of the term of this Lease as stated in Article 2, You may tell Owner in writing, that Owner has 15 additional days to let You move in, or else the Lease will end. If Owner does not allow You to move in within those additional 15 days, then the Lease is ended. Any money paid by You on account of this Lease will then be refunded promptly by Owner.

**6.   CAPTIONS**

   In any dispute arising under this Lease, in the event of a conflict between the text and a caption, the text controls.

**7.   WARRANTY OF HABITABILITY**

   A. All of the sections of this Lease are subject to the provisions of the Warranty of Habitability Law in the form it may have from time to time during this Lease. Nothing in this Lease can be interpreted to mean that You have given up any of your rights under that law. Under that law, Owner agrees that the Apartment and the Building are fit for human habitation and that there will be no conditions which will be detrimental to life, health or safety.

   B. You will do nothing to interfere or make more difficult Owner's efforts to provide You and all other occupants of the Building with the required facilities and services. Any condition caused by your misconduct or the misconduct of anyone under your direction or control shall not be a breach by Owner.

**8.   CARE OF YOUR APARTMENT-END OF LEASE-MOVING OUT**

   A. You will take good care of the apartment and will not permit or do any damage to it, except for damage which occurs through ordinary wear and tear. You will move out on or before the ending date of this lease and leave the Apartment in good order and in the same condition as it was when You first occupied it, except for ordinary wear and tear and damage caused by fire or other casualty.

   B. When this Lease ends, You must remove all of your movable property. You must also remove at your own expense, any wall covering, bookcases, cabinets, mirrors, painted murals or any other installation or attachment You may have installed in the Apartment, even if it was done with Owner's consent. You must restore and repair to its original condition those portions of the Apartment affected by those installations and removals. You have not moved out until all persons, furniture and other property of yours is also out of the Apartment. If your property remains in the Apartment after the Lease ends, Owner may either treat You as still in occupancy and charge You for use, or may consider that You have given up the Apartment and any property remaining in the Apartment. In this event, Owner may either discard the property or store it at your expense. You agree to pay Owner for all costs and expenses incurred in removing such property. The provisions of this article will continue to be in effect after the end of this Lease.

**9.   CHANGES AND ALTERATIONS TO APARTMENT**

   You cannot build in, add to, change or alter, the Apartment in any way, including wallpapering, painting, repainting, or other decorating, without getting Owner's written consent before You do anything. Without Owner's prior written consent, You cannot install or use in the Apartment any of the following: dishwasher machines, clothes washing or drying machines, electric stoves, garbage disposal units, heating, ventilating or air conditioning units or any other electrical equipment which, in Owner's reasonable opinion, will overload the existing wiring installation in the Building or interfere with the use of such electrical wiring facilities by other tenants of the Building. Also, You cannot place in the Apartment water-filled furniture.

**10.   YOUR DUTY TO OBEY AND COMPLY WITH LAWS, REGULATIONS AND LEASE RULES**

   A. **Government Laws and Orders.**   You will obey and comply (1) with all present and future city, state and federal laws and regulations, which affect the Building or the Apartment, and (2) with all orders and regulations of Insurance Rating Organi-zations which affect the Apartment and the Building. You will not allow any windows in the Apartment to be cleaned from the outside, unless the equipment and safety devices required by law are used.

   B. **Owner's Rules Affecting You.**   You will obey all Owner's rules listed in this Lease and all future reasonable rules of Owner or Owner's agent. Notice of all additional rules shall be delivered to You in writing or posted in the lobby or other public place in the building. Owner shall not be responsible to You for not enforcing any rules, regulations or provisions of another tenant's lease except to the extent required by law.

   C. **Your Responsibility.**   You are responsible for the behavior of yourself, of your immediate family, your servants and people who are visiting You. You will reimburse Owner as additional rent upon demand for the cost of all losses, damages, fines and reasonable legal expenses incurred by Owner because You, members of your immediate family, servants or people visiting You have not obeyed government laws and orders or the agreements or rules of this Lease.

**11.   OBJECTIONABLE CONDUCT**

   As a tenant in the Building, You will not engage in objectionable conduct. Objectionable conduct means behavior which makes or will make the Apartment or the Building less fit to live in for You or other occupants. It also means anything which interferes with the right of others to properly and peacefully enjoy their Apartments, or causes conditions that are danger-ous, hazardous, unsanitary and detrimental to other tenants in the Building. Objectionable conduct by You gives Owner the right to end this Lease.

**12.   SERVICES AND FACILITIES**

   A. **Required Services.**   Owner will provide cold and hot water and heat as required by law, repairs to the Apartment as required by law, elevator service if the Building has elevator equipment, and the utilities, if any, included in the rent, as set forth in sub-paragraph B. You are not entitled to any rent reduction because of a stoppage or reduction of any of these above services unless it is provided by law.

   B. The following utilities are included in the rent _____

   C. **Electricity and Other Utilities.**   If Owner provides electricity or gas and the charges is included in the rent on

after the end of this year 10-day notice, Owner begins to substitute an automatic control type of elevator and proceeds diligently with its installation.

F. **Storeroom Use.** If Owner permits You to use any storeroom, laundry or any other facility located in the building but outside of the Apartment, the use of this storeroom or facility will be furnished to You free of charge and at your own risk, except for loss suffered by You due to Owner's negligence. You will operate at your expense any coin operated appliances located in such storeroom or laundries.

13. **INABILITY TO PROVIDE SERVICES**

Because of a strike, labor trouble, national emergency, repairs, or any other cause beyond Owner's reasonable control, Owner may not be able to provide or may be delayed in providing any services or in making any repairs to the Building. In any of these events, any rights You may have against Owner are only those rights which are allowed by laws in effect when the reduction in service occurs.

14. **ENTRY TO APARTMENT**

During reasonable hours and with reasonable notice, except in emergencies, Owner may enter the Apartment for the following reasons:

(A) To erect, use and maintain pipes and conduits in and through the walls and ceilings of the Apartment; to inspect the Apartment and to make any necessary repairs or changes Owner decides are necessary. Your rent will not be reduced because of any of this work, unless required by Law.

(B) To show the Apartment to persons who may wish to become owners or lessees of the entire Building or may be interested in lending money to Owner;

(C) For four months before the end of the Lease, to show the Apartment to persons who wish to rent it;

(D) If during the last month of the Lease You have moved out and removed all or almost all of your property from the Apartment, Owner may enter to make changes, repairs, or redecorations. Your rent will not be reduced for that month and this Lease will not be ended by Owner's entry.

(E) If at any time You are not personally present to permit Owner or Owner's representative to enter the Apartment and entry is necessary or allowed by law or under this lease, Owner or Owner's representatives may nevertheless enter the Apartment. Owner may enter by force in an emergency. Owner will not be responsible to You, unless during this entry, Owner or Owner's representative is negligent or misuses your property.

15. **ASSIGNING; SUBLETTING; ABANDONMENT**

(a) **Assigning and Subletting.** You cannot assign this Lease or sublet the Apartment without Owner's advance written consent in each instance to a request made by You in the manner required by Real Property Law § 226-b. Owner may refuse to consent to a lease assignment for any reason or no reason, but if Owner unreasonably refuses to consent to request for a Lease assignment properly made, at your request in writing, Owner will end this Lease effective as of thirty days after your request. The first and every other time you wish to sublet the Apartment, You must get the written consent of Owner unless Owner unreasonably withholds consent following your request to sublet in the manner provided by Real Property Law § 226-b. Owner may impose a reasonable credit check fee on You in connection with an application to assign or sublet. If You fail to pay your rent Owner may collect rent from subtenant or occupant without releasing You from the Lease. Owner will credit the amount collected against the rent due from You. However, Owner's acceptance of such rent does not change the status of the subtenant or occupant to that of direct tenant of Owner and does not release You from this Lease.

(b) **Abandonment.** If You move out of the Apartment (abandonment) before the end of this Lease without the consent of Owner, this Lease will not be ended (except as provided by law following Owner's unreasonable refusal to consent to an assignment or subletting requested by You.) You will remain responsible for each monthly payment of rent as it becomes due until the end of this Lease. In case of abandonment, your responsibility for rent will end only if Owner chooses to end this Lease for default as provided in Article 16.

16. **DEFAULT**

(1) You default under the Lease if You act in any of the following ways:

(a) You fail to carry out any agreement or provision of this Lease;

(b) You or another occupant of the Apartment behaves in an objectionable manner;

(c) You do not take possession or move into the Apartment 15 days after the beginning of this Lease;

(d) You and other legal occupants of the Apartment move out permanently before this Lease ends;

If You do default in any one of these ways, other than a default in the agreement to pay rent, Owner may serve You with a written notice to stop or correct the specified default within 10 days. You must then either stop or correct the default within 10 days, or, if You need more than 10 days, You must begin to correct the default within 10 days and continue to do all that is necessary to correct the default as soon as possible.

(2) If You do not stop or begin to correct a default within 10 days, Owner may give You a second written notice that this Lease will end six days after the date the second written notice is sent to You. At the end of the 6-day period, this Lease will end and You then must move out of the Apartment. Even though this Lease ends, You will remain liable to Owner for unpaid rent up to the end of this Lease, the value of your occupancy, if any, after the Lease ends, and damages caused to Owner after that time as stated in Article 18.

(3) If You do not pay your rent when this Lease requires after a personal demand for rent has been made, or within three days after a statutory written demand for rent has been made, or if the Lease ends, Owner may do the following: (a) enter the apartment and retake possession of it if You have moved out or (b) go to court and ask that You and all other occupants in the Apartment be compelled to move out.

Once this Lease has been ended, whether because of default or otherwise, You give up any right You might otherwise have to reinstate or renew the Lease.

17. **REMEDIES OF OWNER AND YOUR LIABILITY**

If this Lease is ended by Owner because of your default, the following are the rights and obligations of You and Owner.

(a) You must pay your rent until this Lease has ended. Thereafter, You must pay an equal amount for what the law calls "use and occupancy" until You actually move out.

If the rent collected by Owner from a subsequent tenant of the Apartment is more than the unpaid rent and damages which You owe Owner, You cannot receive the difference. Owner's failure to re-rent to another tenant will not release or change your liability for damages, unless the failure is due to Owner's deliberate inaction.

**18.    ADDITIONAL OWNER REMEDIES**

If You do not do everything You have agreed to do, or if You do anything which shows that You intend not to do what You have agreed to do, Owner has the right to ask a Court to make You carry out your agreement or to give the Owner such other relief as the Court can provide. This is in addition to the remedies in Article 16 and 17 of this lease.

**19.    FEES AND EXPENSES**

A . **Owner's Right.** You must reimburse Owner for any of the following fees and expenses incurred by Owner:

(1) Making any repairs to the Apartment or the Building which result from misuse or negligence by You or persons who live with You, visit You, or work for You;

(2) Repairing or replacing property damaged by Your misuse or negligence;

(3) Correcting any violations of city, state or federal laws or orders and regulations of insurance rating organizations concerning the Apartment or the Building which You or persons who live with You, visit You, or work for You have caused;

(4) Preparing the Apartment for the next tenant if You move out of your Apartment before the Lease ending date;

*** (5) Any legal fees and disbursements for legal actions or proceedings brought by Owner against You because of a Lease default by You or for defending lawsuits brought against Owner because of your actions;

(6) Removing all of your property after this Lease is ended;

(7) All other fees and expenses incurred by Owner because of your failure to obey any other provisions and agreements of this Lease;

These fees and expenses shall be paid by You to Owner as additional rent within 30 days after You receive Owner's bill or statement. If this Lease has ended when these fees and expenses are incurred, You will still be liable to Owner for the same amount as damages.

B. **Tenant's Right.** Owner agrees that unless sub-paragraph 5 of this Article 19 has been stricken out of this Lease You have the right to collect reasonable legal fees and expenses incurred in a successful defense by You of a lawsuit brought by Owner against You or brought by You against Owner to the extent provided by Real Property Law, section 234.

**20.    PROPERTY LOSS, DAMAGES OR INCONVENIENCE**

Unless caused by the negligence or misconduct of Owner or Owner's agents or employees, Owner or Owner's agents and employees are not responsible to You for any of the following (1) any loss of or damage to You or your property in the Apartment or the Building due to any accidental or intentional cause, even a theft or another crime committed in the Apartment or elsewhere in the Building; (2) any loss of or damage to your property delivered to any employee of the Building (i.e., doorman, superintendent, etc.,); or (3) any damage or inconvenience caused to You by actions, negligence or violations of a Lease by any other tenant or person in the Building except to the extent required by law.

Owner will not be liable for any temporary interference with light, ventilation, or view caused by construction by or in behalf of Owner. Owner will not be liable for any such interference on a permanent basis caused by construction on any parcel of land not owned by Owner. Also, Owner will not be liable to You for such interference caused by the permanent closing, darkening or blocking up of windows, if such action is required by law. None of the foregoing events will cause a suspension or reduction of the rent or allow You to cancel the Lease.

**21.    FIRE OR CASUALTY**

A. If the Apartment becomes unusable, in part or totally, because of fire, accident or other casualty, this Lease will continue unless ended by Owner under C below or by You under D below. But the rent will be reduced immediately. This reduction will be based upon the part of the Apartment which is unusable.

B. Owner will repair and restore the Apartment, unless Owner decides to take actions described in paragraph C below.

C. After a fire, accident or other casualty in the Building, Owner may decide to tear down the Building or to substantially rebuild it. In such case, Owner need not restore the Apartment but may end this Lease. Owner may do this even if the Apartment has not been damaged, by giving You written notice of this decision within 30 days after the date when the damage occurred. If the Apartment is usable when Owner gives You such notice, this Lease will end 60 days from the last day of the calendar month in which You were given the notice.

D. If the Apartment is completely unusable because of fire, accident or other casualty and it is not repaired in 30 days, You may give Owner written notice that You end the Lease. If You give that notice, this Lease is considered ended on the day that the fire, accident or casualty occurred. Owner will refund your security deposit and the pro-rata portion of rents paid for the month in which the casualty happened.

E. Unless prohibited by the applicable insurance policies, to the extent that such insurance is collected, You and Owner release and waive all right of recovery against the other or anyone claiming through or under each applicable policy by way of subrogation.

**22.    PUBLIC TAKING**

The entire building or a part of it can be acquired (condemned) by any government or government agency for a public or quasi-public use or purpose. If this happens, this Lease shall end on the date the government or agency take title and You shall have no claim against Owner for any damage resulting; You also agree that by signing this Lease, You assign to Owner any claim against the Government or Government agency for the value of the unexpired portion of this Lease.

**23.    SUBORDINATION CERTIFICATE AND ACKNOWLEDGMENTS**

All leases and mortgages of the Building or of the land on which the Building is located, now in effect or made after this Lease is signed, come ahead of this Lease. In other words, this Lease is "subject and subordinate to" any existing or future lease or mortgage on the Building or land, including any renewals, consolidations, modifications and replacements of these leases or mortgages. If certain provisions of any of these leases or mortgages come into effect, the holder of such lease or mortgage can end this lease. If this happens, You agree that You have no claim against Owner or such lease or mortgage holder. If Owner requests, You will sign promptly an acknowledgement of the "subordination" in the form that Owner requires.

You also agree to sign (if accurate) a written acknowledgement to any third party designated by Owner that this Lease

FILED: NEW YORK COUNTY CLERK 11/06/2023 03:07 PM
NYSCEF DOC. NO. 70

INDEX NO. 850045/2023
RECEIVED NYSCEF: 11/06/2023

23-11924-jpm   Doc 7   Filed 12/15/23   Entered 12/15/23 17:34:50   Main Document
Pg 70 of 94

B. **Notices to Owner.** If You wish to give a notice to Owner, you must write it and deliver it or send it by registered or certified mail to Owner at the address noted on page 1 of this Lease or at another address of which Owner or Agent has given You written notice.

26. **GIVING UP RIGHT TO TRIAL BY JURY AND COUNTERCLAIM**

A. Both You and Owner agree to give up the right to a trial by jury in a court action, proceeding or counterclaim on any matters concerning this Lease, the relationship of You and Owner as Tenant and Landlord or your use or occupancy of the Apartment. This agreement to give up the right to a jury trial does not include claims for personal injury or property damage.

B. If Owner begins any court action or proceeding against You which asks that You be compelled to move out, You cannot make a counterclaim unless You are claiming that Owner has not done what Owner is supposed to do about the condition of the Apartment or the Building.

27. **NO WAIVER OF LEASE PROVISIONS**

A. Even if Owner accepts your rent or fails once or more often to take action against You when You have not done what You have agreed to do in this Lease, the failure of Owner to take action or Owner's acceptance of rent does not prevent Owner from taking action at a later date if You again do not do what You have agreed to do.

B. Only a written agreement between You and Owner can waive any violation of this Lease.

C. If You pay and Owner accepts an amount less than all the rent due, the amount received shall be considered to be in payment of all or a part of the earliest rent due. It will not be considered an agreement by Owner to accept this lesser amount in full satisfaction of all of the rent due.

D. Any agreement to end this Lease and also to end the rights and obligations of You and Owner must be in writing, signed by You and Owner or Owner's agent. Even if You give keys to the Apartment and they are accepted by any employee, or agent, or Owner, this Lease is not ended.

28. **CONDITION OF THE APARTMENT**

When You signed this Lease, You did not rely on anything said by Owner, Owner's agent or superintendent about the physical condition of the Apartment, the Building or the land on which it is built. You did not rely on any promises as to what would be done, unless what was said or promised is written in this Lease and signed by both You and Owner or found in Owner's floor plans or brochure shown to You before You signed the Lease. Before signing this Lease, You have inspected the apartment and You accept it in its present condition "as is," except for any condition which You could not reasonably have seen during your inspection. You agree that Owner has not promised to do any work in the Apartment except as specified in attached "Work" rider.

29. **DEFINITIONS**

A. Owner: The term "Owner" means the person or organization receiving or entitled to receive rent from You for the Apartment at any particular time other than a rent collector or managing agent of Owner. "Owner" includes the owner of the land or Building, a lessor, or sublessor of the land or Building and a mortgagee in possession. It does not include a former owner, even if the former owner signed this Lease.

B. You: The Term "You" means the person or persons signing this Lease as Tenant and the successors and assigns of the signer. This Lease has established a tenant-landlord relationship between You and Owner.

30. **SUCCESSOR INTERESTS**

The agreements in this Lease shall be binding on Owner and You and on those who succeed to the interest of Owner or You by law, by approved assignment or by transfer.

**Owners Rules - a part of this lease - see page 6**

TO CONFIRM OUR AGREEMENTS, OWNER AND YOU RESPECTIVELY SIGN THIS LEASE AS OF THE DAY AND YEAR FIRST WRITTEN ON PAGE 1.

Witnesses

_____     _____ [L.S.]
                                          Owner's Signature

_____     _____ [L.S.]
                                          Tenant's Signature Diana Barake 9/12/2023

_____     _____ [L.S.]
                                          Tenant's Signature Tamara Belmeni 9/12/2023

## GUARANTY

The undersigned Guarantor guarantees to Owner the strict performance of and observance by Tenant of all the agreements, provisions and rules in the attached Lease. Guarantor agrees to waive all notices when Tenant is not paying rent or not observing and complying with all of the provisions of the attached Lease. Guarantor agrees to be equally liable with Tenant so that Owner may sue Guarantor directly without first suing Tenant. The Guarantor further agrees that his guaranty shall remain in full effect even if the Lease is renewed, changed or extended in any way and even if Owner has to make a claim against Guarantor. Owner and Guarantor agree to waive trial by jury in any action, proceeding or counterclaim brought against the other on any matters concerning the attached Lease or the Guaranty.

| Apartment | 34 |
|---|---|
| Premises | 651 W 169 st |
| Tenant | Belmeni Barake Tamara Josefina, Barake De Belmeni Diana |
| Expires | 9/6/24 |



STANDARD FORM OF APARTMENT

# Lease

The Real Estate Board of New York, Inc.

Copyright 1988. All rights Reserved. Reproduction in whole or in part prohibited.

## ATTACHED RULES WHICH ARE A PART OF THE LEASE
## AS PROVIDED BY ARTICLE 10

**Public Access Ways**

1.    (a) Tenants shall not block or leave anything in or on fire escapes, the sidewalks, entrances, driveways, elevators, stairways, or halls. Public access ways shall be used only for entering and leaving the Apartment and the Building. Only those elevators and passageways designated by Owner can be used for deliveries.

(b) Baby carriages, bicycles or other property of Tenants shall not be allowed to stand in the halls, passageways, public areas or courts of the Building.

**Bathroom and Plumbing Fixtures**

2.    The bathrooms, toilets and wash closets and plumbing fixtures shall only be used for the purposes for which they were designed or built; sweepings, rubbish bags, acids or other substances shall not be placed in them.

**Refuse**

3.    Carpets, rugs or other articles shall not be hung or shaken out of any window of the Building. Tenants shall not sweep or throw or permit to be swept or thrown any dirt, garbage or other substances out of the windows or into any of the halls, elevators or elevator shafts. Tenants shall not place any articles outside of the Apartments or outside of the building except in safe containers and only at places chosen by Owner.

**Elevators**

4.    All non-automatic passenger and service elevators shall be operated only by employees of Owner and must not in any event be interfered with by Tenants. The service elevators, if any, shall be used by servants, messengers and trades people for entering and leaving, and the passenger elevators, if any, shall not be used by them for any purpose. Nurses with children, however, may use the passenger elevators.

**Laundry**

5.    Laundry and drying apparatus, if any, shall be used by Tenants in the manner and at the times that the superintendent or other representative of Owner may direct. Tenants shall not dry or air clothes on the roof.

**Keys and Locks**

6.    Owner may retain a pass key to the apartment. Tenants may install on the entrance of the Apartment an additional lock of not more than three inches in circumference. Tenants may also install a lock on any window but only in the manner provided by law. Immediately upon making any installation of either type, Tenants shall notify Owner or Owner's agent and shall give Owner or Owner's agent a duplicate key. If changes are made to the locks or mechanism installed by Tenants, Tenants must deliver keys to Owner. At the end of this Lease, Tenants must return to Owner all keys either furnished or otherwise obtained. If Tenants lose or fail to return any keys which were furnished to them, Tenants shall pay to Owner the cost of replacing them.

**Noise**

7.    Tenants, their families, guests, employees, or visitors shall not make or permit any disturbing noises in the Apartment or Building or permit anything to be done that will interfere with the rights, comforts or convenience of other tenants. Also, Tenants shall not play a musical instrument or operate or allow to be operated a phonograph, CD player, radio or television set so as to disturb or annoy any other occupant of the Building.

**No Projections**

8.    An aerial may not be erected on the roof or outside wall of the Building without the written consent of Owner. Also, awnings or other projections shall not be attached to the outside walls of the Building or to any balcony or terrace.

**No Pets**

9.    Dogs or animals of any kind shall not be kept or harbored in the Apartment, unless in each instance it be expressly permitted in writing by Owner. This consent, if given, can be taken back by Owner at any time for good cause on reasonably given notice. Unless carried or on a leash, a dog shall not be permitted on any passenger elevator or in any public portion of the building. Also, dogs are not permitted on any grass or garden plot under any condition. BECAUSE OF THE HEALTH HAZARD AND POSSIBLE DISTUR-BANCE OF OTHER TENANTS WHICH ARISE FROM THE UNCONTROLLED PRESENCE OF ANIMALS, ESPECIALLY DOGS, IN THE BUILDING, THE STRICT ADHERENCE TO THE PROVISIONS OF THIS RULE BY EACH TENANT IS A MATERIAL REQUIRE-

## RENEWAL LEASE FORM

Owners and Tenants should read **INSTRUCTIONS TO OWNER** and **INSTRUCTIONS TO TENANT**
on reverse side before filling out or signing this form

**THIS IS A NOTICE FOR RENEWAL OF LEASE AND RENEWAL LEASE FORM ISSUED UNDER SECTION 2523.5(a) OF THE RENT STABILIZATION CODE. ALL COPIES OF THIS FORM MUST BE SIGNED BELOW AND RETURNED TO YOUR LANDLORD WITHIN 60 DAYS.**

Dated: 8/10/2023   20____

Tenant's Name(s) and Address:
Marco Antonio Vazquez and Sandra Ortega
651 W 169st Apt 21
New York, NY 10032

Owner's /Agent's Name and Address:
Panzer Building Corp
544 E 86th St Apt 14E
New York, NY 10028

1. The owner hereby notifies you that your lease will expire on: ____ / ____ / ____

### PART A - OFFER TO TENANT TO RENEW

2. You may renew this lease, for one or two years, at your option, as follows:

| Column A Renewal Term | Column B Legal Rent on Sept.30th Preceding Commencement Date of this Renewal Lease | Column C Guideline % or Minimum $ Amount (If unknown, check box and see below)* | Column D Applicable Guideline Supplement, if any | Column E Lawful Rent Increase, if any, Effective after Sept. 30th | Column F New Legal Rent (If a lower rent is to be charged, check box and see item 5 below) |
|---|---|---|---|---|---|
| 1 Year | $ 1027.40 | ( %) $ 2.75 % | $ | $ 1055.65 | ** |
| 2 Years | Same as above | ( %) $ 2.75+3.2 %s | $ | $ 1089.43 | ** |

* If applicable guideline rate is unknown at time offer is made, check box in Column C and enter current guideline which will be subject to adjustment when rates are ordered.

** Rent Guidelines Board Order #53 applies to leases commencing between 10/1/21 and 9/30/22. The one (1) year lease guideline increase cannot be applied until the final six (6) months of the lease. There is no guideline increase in the first six (6) months.

3. Security Deposit: *** Collectable after the sixth (6) month of a one-year lease renewal.

Current Deposit: $_____
Additional Deposit Required - 1 year lease: $_____ ***
Additional Deposit Required - 2 year lease: $_____

4. Specify separate charges, if applicable:
a. Air conditioner : $_____
b. Appliances : $_____
c. 421a (2.2%): $_____
d. Other: $_____
Total separate charges: $_____

5. Lower Rent to be charged, if any. 1 year lease $_____, 2 year lease $_____ Agreement attached: Yes ☐ No ☐

6. Tenant shall pay a monthly rent (enter amount from 2F or 5) of $_____ for a 1 year renewal or $_____ for a 2 year renewal, plus total separate charges (enter amount from 4) $_____ for a total monthly payment of $_____ for a 1 year renewal or $_____ for a 2 year renewal.

7. This renewal lease shall commence on 10/1/2023, which shall not be less than 90 days nor more than 150 days from the date of mailing or personal delivery of this Renewal Lease Form. This Renewal Lease shall terminate on 10/1/2024 (1 year lease) or 9/30/2025 (2 year lease).

8. This renewal lease is based on the same terms and conditions as your expiring lease. (See instructions about additional provisions.)

9. SCRIE and DRIE. Owner and Tenant acknowledge that, as of the date of this renewal, Tenant is entitled to pay a reduced monthly rent in the amount of $_____ under the New York City SCRIE program or the New York City DRIE program. The reduced rent may be adjusted by orders of such program

10. Leased premises does ☐, does not ☒ have an operative sprinkler system. If operative, it was last maintained and inspected on _____

This form becomes a binding lease renewal when signed by the owner below and returned to the tenant. A rider setting forth the rights and obligations of tenants and owners under the Rent Stabilization Law must be attached to this lease when signed by the owner and returned to the tenant. The rent, separate charges and total payment provided for in this renewal lease may be increased or decreased by order or annual updates of the Division of Housing and Community Renewal (DHCR) or the Rent Guidelines Board (RGB).

### PART B - TENANT'S RESPONSE TO OWNER

Tenant: Check and complete where indicated one of three responses below after reading instructions on reverse side. Then date and sign your response below. You must return this Renewal Lease Form to the owner in person or by regular mail, within 60 days of the date this Notice was served upon you by the owner. Your failure to do so may be grounds for the commencement of an action by the owner to evict you from your apartment

☑ I (we), the undersigned Tenant(s), accept the offer of a one (1) year renewal lease at a monthly rent of $ 1055.65 plus separate charges of $_____ for a total monthly payment of $ 1055.65 **No rent increase in the first six (6) months.

☐ I (we), the undersigned Tenant(s), accept the offer of a two (2) year renewal lease at a monthly rent of $_____, plus separate charges of $_____ for a total monthly payment of $_____

☐ I (we) will not renew my (our) lease and I (we) intend to vacate the apartment on the expiration date of the current lease.

Dated: 8/12   20 23

Dated: ____ 20 ____

Tenant's Signature(s): _____

Owner's Signature(s): _____

RTP-8 (6/21)

---

### INSTRUCTIONS TO OWNER

At least two copies of this completed Renewal Lease Form must be mailed to the tenant in occupancy or personally delivered not more than 150 days and not less than 90 days prior to the end of the tenant's lease term, along with the New York City Lease Rider For Rent Stabilized Tenants

If the owner offers a Renewal Lease less than 90 days prior to the expiration of the existing lease, the lease term selected by the tenant shall begin at the tenant's option either (1) on the date a renewal lease would have begun had a timely offer been made or (2) on the first rent payment date occurring no less than 90 days after the date that the owner does offer the lease to the tenant. The guidelines rate applicable for such lease shall be no greater than the rate in effect on the commencement date of the lease for which a timely offer should have been made, and the increased rental shall not begin before the first rent payment date occurring no less than 90 days after such offer is made

The owner must fully complete PART A on the reverse side of this Form explaining how the new rent has been computed. Any rent increase must not exceed the applicable Rent Guidelines Board adjustment(s) plus other adjustments authorized by the Rent Stabilization Code

Tenants that were paying a preferential rent as of June 14, 2019 or thereafter, retain the preferential rent for the life of the tenancy. Rent Guidelines Board increases and other increases allowed by the Rent Stabilization Law are to be applied to the preferential rent

This Renewal Lease must be offered on the same terms and conditions as the expiring lease, except for such additional provisions as are permitted by law or the Rent Stabilization Code which must be set forth by the owner and attached to this Form. If there are any additional lawful agreements between the owner and tenant, a copy signed by both parties must be attached to this Form.

The tenant must return to the owner all copies of this Form, completed and signed by the tenant in PART B on the reverse side of this Form.

The owner must furnish the tenant with a fully executed copy of this Renewal Lease Form bearing the tenant's and owner's signatures in PART B, and a copy of the DHCR New York City Lease Rider, within 30 days of the owner's receipt of this Form signed by the tenant. Service of this fully executed copy of this Form, upon the tenant, constitutes a binding renewal lease. If the owner fails to furnish the tenant with a fully executed copy of this Form within 30 days of receipt of the Form signed by the tenant, the tenant shall continue to have all rights afforded by the Rent Stabilization Law and Code, and the owner will be barred from commencing any action or proceeding against the tenant based upon non-renewal of lease.

---

### INSTRUCTIONS TO TENANT
(Read Owner's and Tenant's Instructions carefully before completing this Renewal Lease Form)

If you wish to accept this offer to renew your lease, you must complete and sign this Renewal Lease Form in the space provided in PART B on the reverse side of this Form, and you must return all copies of the signed Lease Form to the owner in person or by regular mail within 60 days of the date this Form was served upon you. You may wish to make a copy for your own records. **If you do not sign and return this Renewal Lease Form within the prescribed 60-day period, the owner may have grounds to start proceedings to evict you from your apartment.**

Before you complete and sign PART B and return this Renewal Lease Form, be sure to check that all lawful provisions and written agreements have been attached by the owner to this Form. Please read all attachments carefully. If such other lawful provisions appear, they are part of this lease renewal offer and renewal lease. If there are any lawful agreements between you and the owner, attached copies must be signed by both parties

If the owner agrees to a rent which is lower than the legal regulated rent, this lower amount should be entered in item 5 on the reverse side of this Form, and a signed copy of the agreement should be attached. You may not change the content of this Renewal Lease Form without the owner's written consent. If a "lower rent" amount is listed in item 5 and such rent is a "preferential rent," upon renewal the owner may **not** increase the rent to the legal rent listed in item 2F. Tenants that were paying a preferential rent as of June 14, 2019, retain the preferential rent for the life of the tenancy. Rent Guidelines Board increases and other increases allowed by the Rent Stabilization Law are to be applied to the preferential rent.

Your acceptance of this offer to renew shall constitute a renewal of the present lease for the term of years and rent accepted, subject to any other lawful changes which appear in writing on the attachments to this Form, and subject also to payment of the new rent and additional security, if any. Such additional security shall be deposited by the owner in the manner provided for on initial occupancy. **However, pursuant to the Housing Stability and Tenant Protection Act of 2019, an owner can hold no more than one month security deposit. Anything in excess of one month must be refunded to the tenant.**

Please refer to the New York City Lease Rider for a summary of tenants' rights and owners' responsibilities.

State of New York
Division of Housing and Community Renewal
Office of Rent Administration/Gertz Plaza
92-31 Union Hall Street
Jamaica, New York 11433
**Web Site: www.hcr.ny.gov**

FILED: NEW YORK COUNTY CLERK 11/06/2023 03:07 PM
INDEX NO. 850045/2023
NYSCEF DOC. NO. 71
RECEIVED NYSCEF: 11/06/2023
23-11924-jpm   Doc 7   Filed 12/15/23   Entered 12/15/23 17:34:50   Main Document
Pg 74 of 94

EXHIBIT C

# START ELEVATOR LLC

4350 Bullard Avenue,
Bronx
New York 10466

Tel:    (718) 324-9166
Fax:    (718) 324-9253
Email:    repair@startelevator.com

**To:**    651 West 169th Street
13 West 38th Street 2nd Floor
New York, NY 10018

**Date:** September 19, 2023
**Building:** 651 West 169th Street
**Proposal #:** REP-23-372
**Device ID#:** 1P10304

**Attn:**    EDWARD A VINCENT

**Ref:** REPLACE BRAKE PADS

Upon a recent visit to the above site, our mechanic reported that the brake shoe pads on device 1P10304 are worn and need to be replaced at this time to prevent any unnecessary issues.

We propose to perform the following work and provide the following materials.

- Secure the elevator and counterweight to a safe workspace.
- Disassemble the machine brake and remove brake shoes.
- Bring brake shoes to our machine shop for relining.
- The brake assembly will be fully repaired.
- Reinstall braking system with newly overhauled assembly.
- Adjust as needed.
- Test for proper operation.
- Return elevator to service.

The cost for this work is $ 3,090.00, plus any applicable taxes.

**The total cost for this work including sales tax is:**
**Three Thousand Three Hundred Sixty Four & 24/100 Dollars ($3,364.24)**

Terms 50% Upon Signing & 50% Upon Completion

Should you have any questions, please do not hesitate to contact me at the office.

Yours truly,

**Accepted:**

By:    _____

*Marco Perez*

Title:    _____

Marco Perez
Key Accounts Manager

Date:    _____

FILED: NEW YORK COUNTY CLERK 11/06/2023 03:07 PM

NYSCEF DOC. NO. 72

INDEX NO. 850045/2023

RECEIVED NYSCEF: 11/06/2023

23-11924-jpm   Doc 7   Filed 12/15/23   Entered 12/15/23 17:34:50   Main Document
Pg 76 of 94

# EXHIBIT D

FILED: NEW YORK COUNTY CLERK 11/06/2023 03:07 PM
INDEX NO. 850045/2023
NYSCEF DOC. NO. 72
RECEIVED NYSCEF: 11/06/2023
23-11924-jpm   Doc 7   Filed 12/15/23   Entered 12/15/23 17:34:50   Main Document
Pg 77 of 94

**M. SAMBA PLUMBING & REPAIRS**

PO BOX 970
BROOKLYN, NY 11238
TEL # (914) 879-9685
FAX # (914) 712-9114

# JOB ESTIMATE

**DATE: 10/05/23**

**BILL TO:**

NYC MANAGEMENT
ATTN: ENIS

**FOR:**

651 W 169TH ST
BASEMENT

| DESCRIPTION | AMOUNT |
|---|---|
| REPLACE CORRODED MAIN RISER HOT WATER | |
| REPLACE SHUTOFF VALVE HOT WATER LINE | |
| REPLACE BROKEN 5" Y AND SECTION 5" STACK WASTE LINE | |
| REPLACE SECTION 2" BRANCH | |
| OPEN FLOOR IN BOILER ROOM | |
| INSTALL BASIN AND HIGH TEMPERATURE AUTOMATIC SUMP | |
| INSTALL DRAIN PUMP AND CHECK VALVE | |
| **MATERIAL & LABOR** | $5,800.00 |
| **TOTAL** | **$ 5,800.00** |

FILED: NEW YORK COUNTY CLERK 11/06/2023 03:07 PM

NYSCEF DOC. NO. 73

INDEX NO. 850045/2023

RECEIVED NYSCEF: 11/06/2023

23-11924-jpm   Doc 7   Filed 12/15/23   Entered 12/15/23 17:34:50   Main Document
Pg 78 of 94

EXHIBIT E

**US SHELTECH NY INC.**

3602 13th Ave.
Brooklyn, NY 11218
+1 9176670070
ussheltechny@gmail.com
www.ussheltechny.com



# PROPOSAL

| ADDRESS | | PROPOSAL | 1315 |
|---|---|---|---|
| Enis Cecunjanin | | DATE | 10/04/2023 |

NEW YORK CITY MANAGEMENT LLC
13 W 38th St.
NY, NY 10018 United States
RE: 651 W 159TH ST. NY, NY (#61,#54, #44)

| JOB DESCRIPTION | PRICE |
|---|---|
| Wall leak repair in 3 apartments (#61, #54, #44) by the stairs. Missing brick pointing, crack repair, and window caulking. | 4,500.00 |
| New roof installation on the unfinished section of the roof. Install new membrane (app 160) and flashing as needed, bubble removal | 7,500.00 |

We are submitting this Proposal for the address mentioned above.
Please sign below:

| | TOTAL | **$12,000.00** |
|---|---|---|

Accepted By

Accepted Date

EXHIBIT G

23-11924-jpm    Doc 7    Filed 12/15/23    Entered 12/15/23 17:34:50    Main Document
Pg 81 of 94

| | |
|---|---|
| **From:** | Edward Vincent |
| **To:** | james@andriolalaw.com; mirrom@finance.nyc.gov; jamesmandriola@gmail.com; haberlawoffices@aol.com; Haberlawoffice@aol.com |
| **Cc:** | Jonathan Finkelman |
| **Subject:** | RE: NYSCEF Notification: New York - Real Property - Mortgage Foreclosure - Commercial - <OATH> 850045/2023 (651 WEST 169TH LENDER LLC v. PANZER BUILDING CORP. et al) |
| **Date:** | Thursday, November 2, 2023 5:48:00 PM |

Counsel,

Please be advised that the Receiver will present an emergency order to show cause on Tuesday 11/7 at 10AM seeking to enjoin and restrain the defendant owner from interfering with the Receiver and property and to make some emergency repairs. Thank you.


Edward A. Vincent, Esq.

Partner

Borchert & LaSpina, P.C.

19-02 Whitestone Expwy, Suite 302

Whitestone, New York  11357

Phone: 718-767-3333

Fax:     718-767-3309

http://www.borchertandlaspina.com

This e-mail message, including attachments, is confidential, is intended only for the named recipient(s) above and may contain information that is privileged, attorney work product, proprietary or exempt from disclosure under applicable law.  The unauthorized use, dissemination, distribution or reproduction of this e-mail message, including attachments, is strictly prohibited.  If you have received this message in error, or are not an intended recipient, please immediately notify the sender and delete this e-mail message, including attachments, from your computer.


PLEASE NOTE THAT THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

---

**From:** efile@nycourts.gov <efile@nycourts.gov>
**Sent:** Tuesday, August 8, 2023 10:47 AM
**To:** james@andriolalaw.com; mirrom@finance.nyc.gov; jamesmandriola@gmail.com; edward.a.vincent@gmail.com; haberlawoffices@aol.com; Edward Vincent <EVincent@blpcny.com>; Haberlawoffice@aol.com
**Subject:** NYSCEF Notification: New York - Real Property - Mortgage Foreclosure - Commercial - <OATH> 850045/2023 (651 WEST 169TH LENDER LLC v. PANZER BUILDING CORP. et al)


# New York County Supreme Court
## Notification of Filing

FILED: NEW YORK COUNTY CLERK 11/06/2023 03:07 PM
NYSCEF DOC. NO. 75

INDEX NO. 850045/2023

RECEIVED NYSCEF: 11/06/2023

23-11924-jpm   Doc 7   Filed 12/15/23   Entered 12/15/23 17:34:50   Main Document
Pg 82 of 94



## 08/08/2023

On 08/08/2023, the NYSCEF System received the documents listed below from filing user EDWARD VINCENT . Please keep this notice as a confirmation of this filing.

## Case Information

Index #: **850045/2023**
Caption: **651 WEST 169TH LENDER LLC v. PANZER BUILDING CORP. et al**
eFiling Status: **Partial Participation Recorded**
Assigned Case Judge: **Francis A. Kahn III**

> **Working Copies** By order of the Chief Administrative Judge (A0/267/20), the court shall NOT request working copies of documents filed electronically.

## Documents Received

| Doc # | Document | Received Date |
|-------|----------|---------------|
| 59 | OATH | 08/08/2023 |
| 60 | BOND/UNDERTAKING | 08/08/2023 |
| 61 | DEMAND FOR: Notice to Attorn to Receiver | 08/08/2023 |

## E-mail Service Notifications Sent

| Name | Email Address |
|------|---------------|
| JAMES ANDRIOLA | james@andriolalaw.com |
| MICHAEL HABER | Haberlawoffice@aol.com |
| EDWARD VINCENT | evincent@blpcny.com |
| MICHELE MIRRO | mirrom@finance.nyc.gov |

## E-mail Service Notifications NOT Sent

Court rules require hard copy service upon non-participating parties and attorneys who have opted-out or declined consent

| Party | Attorney |
|-------|----------|
| NEW YORK CITY DEPARTMENT OF FINANCE, Defendant/Respondent | No Representation Recorded |
| NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, Defendant/Respondent | No Representation Recorded |
| JOHN DOE #1 THROUGH JOHN DOE #20, Defendant/Respondent | No Representation Recorded |

## Filing User

**EDWARD VINCENT** | evincent@blpcny.com

**Emergency Applications** For Emergency Applications made after 5 p.m. or on days when the court is closed, please call 800-430-8457 or email emergency@nycourts.gov.

*NOTICE: This e-mail is intended only for the named recipient and for the purposes of the New York State Courts E-Filing System. If you are neither the intended recipient nor a person designated to receive messages on behalf of the intended recipient, notify the sender immediately.*

*If you are unsure of the contents or origin of this email, it is advised to NOT click on any links provided. Instead, log into your NYSCEF account to access the documents referred to in this email. Thank you.*

**Hon. Milton A. Tingling, New York County Clerk and Clerk of the Supreme Court**

**Phone:** 646-386-5956

**Website:** http://www.nycourts.gov/courts/1jd/supctmanh/county_clerk_operations.shtml

23-11924-jpm    Doc 7    Filed 12/15/23    Entered 12/15/23 17:34:50    Main Document

Pg 84 of 94

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------X

651 WEST 169TH LENDER LLC,                          Index No.: 850045/2023

                                  Plaintiff,

                                                    **SUPPLEMENTAL**
                                                    **AFFIRMATION IN**
                    -against-                       **SUPPORT OF MOTION**
                                                    **FOR CONTEMPT, TO**
                                                    **APPROVE SECONDARY**
                                                    **APPOINTMENTS AND**
PANZER BUILDING CORP., NANCY J.                     **APPROVAL OF REPAIRS**
HABER, NEW YORK CITY DEPARTMENT
OF FINANCE, CITY OF NEW YORK                        Assigned To:
ENVIRONMENTAL CONTROL BOARD, NEW                    Hon. Francis A. Kahn, III,
YORK STATE DEPARTMENT OF TAXATION                   J.S.C., Part 32
AND FINANCE and JOHN DOE #1
THROUGH JOHN DOE #20 (said John Doe
defendants being fictitious, it being intended to
name all other parties who may have some
interest in or lien upon the premises sought to
be foreclosed),

                                  Defendants.
----------------------------------------------------------------X

        Edward A. Vincent, Esq., an attorney admitted to practice law in and

before the courts of the State of New York, affirms that the following

statements are true and accurate and subject to the penalties of perjury:

        1.      I submit this supplemental affirmation in support of my order to

show cause, <u>inter alia</u>, to adjudge defendants Panzer Building Corp. and

Nancy J. Haber (the "Defendants") to be in contempt of this Court's order

and my notice to attorn compelling the defendants to turn over immediate,

complete, and unfettered access and control of the real properties known as 651 West 169th Street a/k/a 226/230 Fort Washington Avenue, New York, New York (collectively, the "Premises") and account for all rents received, to approve the appointment of a property manager and special landlord-tenant counsel and to approve repairs of the elevator located at Premises.

2.     On November 8, 2023, the signed order to show cause was uploaded to NYSCEF under Document Number 76. After receiving the signed order to show cause I was notified that additional repairs to the elevator would be required that were not previously included in the instant motion. A copy of Start Elevator LLC's updated proposal is annexed to this supplemental affirmation as Exhibit "A".

3.     I respectfully request that these repairs also be approved by the Court. They are necessary for the safety and operation of the Premises.

Dated:     November 14, 2023

*/s/ Edward A. Vincent*
Edward A. Vincent, Esq.

FILED: NEW YORK COUNTY CLERK 11/14/2023 02:29 PM
INDEX NO. 850045/2023
NYSCEF DOC. NO. 79
23-11924-jpm   Doc 7   Filed 12/15/23   Entered 12/15/23 17:34:50   Main Document
RECEIVED NYSCEF: 11/14/2023
Pg 86 of 94

## CERTIFICATE OF COMPLIANCE

The foregoing affirmation/memorandum was prepared on a computer. A proportionally spaced typeface was used, as follows:

Name of typeface: Arial

Point Size:          14

Line Spacing:       Double

Pursuant to rule 22 NYCRR 202.8b, the total number of words in the affirmation/memorandum, inclusive of point heading and footnotes and executive pages containing the table of contents, table of citations, proof of service, certificate of compliance, or any authorize addendum containing statues, rules, regulations, etc., is 230 words.

Dated:      Whitestone, New York
            November 14, 2023

                              Borchert & LaSpina, P.C.

                    By:    */s/ Edward A. Vincent*
                           Edward A. Vincent, Esq.
                           *Temporary Receiver*
                           19-02   Whitestone   Expressway,
                           Suite 302
                           Whitestone, NY 11357
                           Tel. (718) 767-3333

# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 11/14/2023 02:29 PM INDEX NO. 850045/2023
NYSCEF DOC. NO. 80 RECEIVED NYSCEF: 11/14/2023

# START ELEVATOR LLC

4350 Bullard Avenue,
Bronx
New York 10466

Tel: (718) 324-9166
Fax: (718) 324-9253
Email: repair@startelevator.com

**To:** 651 West 169th Street
13 West 38th Street 2nd Floor
New York, NY 10018

**Date:** October 26, 2023
**Building:** 651 West 169th Street
**Proposal #:** REP-23-574
**Device ID#:** 1P10304 -

**Attn:** EDWARD A. VINCENT

**Ref:** **Motor Shaft Repair &**
**New Bearings**
**EMERGENCY REPAIR**

**ELEVATOR SHUT DOWN**

We Propose to perform the following work:

- Secure control of elevator.
- Dismantle the hoist machine and remove the damaged shaft and motor off machine.
- Overhaul to machine shop for repair.
- Reweld and remachine broken motor shaft.
- Install new hoist motor bearings.
- Return to the building and reinstall the hoist motor.
- Make all necessary adjustments to the motor.
- Check operations and restore elevator to service.

The cost of this job is $9,740.00, plus applicable taxes.

**The cost for this work: Ten Thousand Six Hundred Four & 43 /100 Dollars**
**($10,604.43)**

Terms 50% Upon Signing & 50% Upon Completion

Should you have any questions, please do not hesitate to contact me at the office.

Yours truly,

*Marco Perez*

Marco Perez
Key Account Representative

**Accepted:**

By: _____

Title: _____

Date: _____

Exhibit E

**WARNING:**
**YOUR FAILURE TO APPEAR**
**IN COURT MAY RESULT IN**
**YOUR IMMEDIATE ARREST**
**AND IMPRISONMENT FOR**
**CONTEMPT OF COURT**

**PLEASE TAKE NOTICE, THAT THE PURPOSE OF THE HEARING IS TO PUNISH DEFENDANTS PANZER BUILDING CORP. AND NANCY J. HABER FOR CONTEMPT OF COURT, AND THAT SUCH PUNISHMENT MAY CONSIST OF FINE OR IMPRISONMENT, OR BOTH, ACCORDING TO LAW.**

At Part 32 of the Supreme Court of the State of New York, held in and for the County of New York at Courtroom 1127(B) of the courthouse thereof located at 111 Centre Street, New York, New York, on ___Nov 8___, 2023

HON. FRANCIS A. KAHN III

P R E S E N T :  Honorable Francis A. Kahn, III
Justice.

MS#4 Contempt

----------------------------------------------------------------x

651 WEST 169TH LENDER LLC,

Index No.
850045/2023

Plaintiff,

-against-

PANZER BUILDING CORP., NANCY J. HABER, NEW YORK CITY DEPARTMENT OF FINANCE, CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD, NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE and JOHN DOE #1 THROUGH JOHN DOE #20 (said John Doe defendants being fictitious, it being intended to

**ORDER TO SHOW CAUSE FOR CONTEMPT, TO APPROVE SECONDARY APPOINTMENTS AND APPROVAL OF REPAIRS WITH TEMPORARY RESTRAING ORDER**

FILED: NEW YORK COUNTY CLERK 11/08/2023 01:01 PM
INDEX NO. 850045/2023
NYSCEF DOC. NO. 76
23-11924-jpm    Doc 7    Filed 12/15/23    Entered 12/15/23 17:34:50    Main Document
RECEIVED NYSCEF: 11/08/2023
Pg 91 of 94

name all other parties who may have some
interest in or lien upon the premises sought to
be foreclosed),

<div align="center">Defendants.</div>

-----------------------------------------------------------------x

Upon reading and filing the annexed affirmation of the temporary

receiver Edward A. Vincent, Esq. (the "Receiver") dated November 3, 2023,

with exhibits, and upon all the prior pleadings and proceedings heretofore

had herein:

**LET all parties** show cause before the Supreme Court of New York

County, ~~Centralized Motion~~ IAS 32 (127) Part, Room ~~130~~, at the courthouse located at ~~60~~ \\\

Centre Street, New York, New York on ___DEC 5___ ___, 2023,

at 9:30 a.m. or as soon thereafter as counsel can be heard, why an order

should not be made and entered:

> a) adjudging Panzer Building Corp. and Nancy J. Haber
> ("Defendants") to be in ongoing **CONTEMPT** for willful
> disobedience of the Court's Order dated February 28,
> 2023 appointing the Receiver for the real properties
> known as 651 West 169th Street a/k/a 226/230 Fort
> Washington Avenue, New York, New York (collectively,
> the "Premises") and the Receiver's Notice to Attorn dated
> August 7, 2023 directing the defendants to turn over and
> send to the Receiver, all keys, rental payments, rents,
> Tenant security deposits, papers, receipts, leases,
> subleases, utility bills, and/or contracts and agreements
> pertaining to the subject Premises and to turn over to the

23-11924-jpm    Doc 7    Filed 12/15/23    Entered 12/15/23 17:34:50    Main Document
Pg 92 of 94

Receiver immediate, complete and unfettered access to the subject Premises;

b)    compelling Defendants to provide a full accounting of all income and expenses for the Premises after August 7, 2023 and to turn over the corresponding net proceeds and security deposits to the Receiver within 10 days of service of notice of entry of this Court's order;

c)    granting a judgment against the Defendants in favor of the Receiver in the amount of $2,800.00;

d)    approving the Receiver's requested appointment and retention of Barton Schwartz of Barton Schwartz & Associates as property manager for the Premises, nunc pro tunc, as of the date of the appointment of the Receiver on February 28, 2023;

e)    approving the Receiver's requested appointment and retention of Adam Kalish, Esq. as special landlord-tenant counsel for the Receiver, nunc pro tunc, as of the date of the appointment of the Receiver on February 28, 2023, for all nonpayment and eviction proceedings conducted in the Civil Court of the City of New York, New York County, and the Housing Parts thereof;

f)    granting permission to the Special Landlord-Tenant Counsel to pursue all rent arrears from the date of service of the Receiver's Notice to Attorn;

g)    adjudging all advances made by plaintiff to be secured by plaintiff's mortgage and that such advances shall be added to and included in the debt thereupon due and in the judgment of foreclosure and sale, to the extent that the rents, issues, and profits collected by the Receiver and remaining in the Receiver's fiduciary account are insufficient to reimburse plaintiff for such advances;

h)    compelling all New York City and New York State agencies, not-for-profit entities, housing programs,

FILED: NEW YORK COUNTY CLERK 11/08/2023 01:01 PM
NYSCEF DOC. NO. 76

INDEX NO. 850045/2023

RECEIVED NYSCEF: 11/08/2023

23-11924-jpm   Doc 7   Filed 12/15/23   Entered 12/15/23 17:34:50   Main Document
Pg 93 of 94

affordable housing corporations, including, but not limited to, Section 8 Administration, New York City Department of Finance and New York City Department of Housing Preservation and Development, to acknowledge the Receiver and amend their records and remit payments to the Edward A. Vincent, Esq. as Temporary Receiver for tenants participating in any such housing programs and/or tenants receiving payments or subsidies, either directly or indirectly, as payment of rent for the Premises;

i) approving repairs needed to the property as outlined in the proposals included as exhibits to this application;

j) declaring all leases for the Premises entered into by the defendants after the appointment of the Receiver to be void ab initio;

k) ejecting the non bona fide tenants from the Premises;

l) raising the minimum for the amount of expenses that the Receiver may incur for repairs or maintenance of the Premises without court approval from $1,000.00 to $4,500.00; and

m) granting such other, further, and different relief to the Receiver as this court deems just and proper.

**ORDERED** that representatives of Panzer Building Corp. and Nancy J. Haber shall appear in person with their attorneys on the return date of this order to show cause; and it is further

**ORDERED** that Panzer Building Corp. and Nancy J. Haber are enjoined and restrained from collecting rents and interfering with the

Receivership's control of the Premises pending the ~~decision~~ *hearing* of this motion;

and it is further

**ORDERED** that the Receiver is authorized to make emergency

repairs in accordance with Exhibits "C", "D", and "E" of the motion; and it is

further

**ORDERED** that service of a copy of this Order to Show Cause, and

the papers upon which it is based, upon defendants or their respective

counsel via NYSCEF filing, on or before ___NOV 10, 2023___,

2023, be, and hereby is, deemed sufficient service thereof.

**Oral Argument**
**Directed**
**JSC**

**E N T E R :**

_____
Hon. Francis A. Kahn, III, J.S.C

HON. FRANCIS A. KAHN III
J.S.C.